*07.03.00* The Individual Employer shall not assign an Assistant to Engineer to perform the work of an Operating Engineer. The Individual Employer may assign an Employee classified as an Operator to perform the work of Assistant to Engineer/Truck Crane Assistant to Engineer in those instances when all of the Individual Employer's Employees who are classified as Assistant to Engineer/Truck Crane Assistant to Engineer who work out of the Crane Barn where the work will be assigned are assigned to other jobs. When an Assistant to Engineer/Truck Crane Assistant to Engineer completes a job he may bump an Operator assigned in lieu of an Assistant to Engineer/Truck Crane Assistant to Engineer any time after one (1) day has elapsed from the time the Operator was assigned in lieu of an Assistant to Engineer/Truck Crane Assistant to Engineer. The Individual Employer may not assign an Operator in lieu of an Assistant to Engineer/Truck Crane Assistant to Engineer if any Assistant to Engineer/Truck Crane Assistant to Engineer is unemployed or on temporary layoff at the time the assignment is made. The previous sentence shall not apply to an Assistant to Engineer/Truck Crane Assistant to Engineer who has been discharged for cause.

*07.04.00* *Warranty.* The maintenance and repair of equipment done at the site of construction, alteration, painting, repair or demolition of a building, structure or other work shall be performed exclusively by an Employee, or by employees covered by a collective bargaining agreement with the Union; provided, however, that if the Individual Employer has a written contract of warranty covering the equipment, work covered by such warranty may be performed at the jobsite for not more than one hundred twenty (120) days from purchase in the case of new equipment, or not more than thirty (30) days from purchase in the case of used equipment by persons not covered by this Agreement who are eligible to register as Class A Operating Engineers, or Class A Assistant to Engineer, under the Job Placement Regulations of this Agreement, and further provided that for non-warranty work or for work performed after the aforementioned one-hundred-twenty (120) and thirty (30) day time period all maintenance and repair work will be performed under the terms and conditions of this Agreement, except that in the event of a factory modification to be performed on the jobsite, one factory representative shall be excluded from the foregoing.

*07.05.00* *Journeyman Training.* Employees who have been, while unemployed under this Agreement, continuously registered in a California Job Placement Center or other approved Job Placement Center during the previous calendar year (registration during the calendar week following termination shall not break continuous registration) and have not refused four (4) or more dispatches during the previous calendar year and are at the time of application for training registered in a California Job Placement Center:

Room and board Monday through Friday, except on designated holidays as determined by the Joint Apprenticeship Committee while at the training center and the cost of training shall be paid by the Operating Engineers and Participating Employers Pre-Apprentice, Apprentice, and Journeyman Affirmative Action Training Fund.

*07.05.01* Training shall terminate:

(1) On Friday following the Employee's attaining two hundred forty (240) hours of training, except that the Employee may be allowed to train eighty (80) additional hours on the approval of the Joint Apprenticeship Committee.

(2) A shutdown of all or part of the operations of the training center affecting the Employee's training.

(3) Dispatch by a Job Placement Center to employment under a Collective Bargaining Agreement with the Union.

(4) In the case of a termination under 2 or 3 above, the Employee shall be eligible for further training subject to 1 above.

*07.05.02* This training program shall be open at such time as the Operating Engineers and Participating Employers Pre-Apprentice, Apprentice, and Journeyman Affirmative Action Training Fund Trustees so determine.

*07.05.03* Employees applying for training shall be eligible for training on a first come-first trained basis to the extent of the funds made available by the Affirmative Action Trust and that the training facilities are available.

*07.05.04* Employees requesting training shall make application at a Northern California Operating Engineers' Job Placement Center.

*07.05.05*   The Operating Engineers and Participating Employers Pre-Apprentice, Apprentice, and Journeyman Affirmative Action Training Fund Trustees are specifically authorized to modify 07.09.00 through 07.09.04.

*07.06.00*   *Registered Apprentices.* The wages, rates of pay, hours of labor and the other conditions of employment of Registered Apprentices shall be and are governed entirely by the terms and conditions of this Agreement except as modified in 07.10.01 through and including 07.10.13.

*07.06.01*   The education, training and disciplining of Registered Apprentices shall be governed by the appropriate Joint Apprenticeship Committee and Standards:

(1)   Operating Engineers Apprenticeship Committee for the 46 Counties of Northern California;

(2)   Northern California Surveyors Joint Apprenticeship Committee.

*07.06.02*   *Apprentice Wage Rates.* The straight-time hourly rate of Operating Engineers Registered Apprentices in the Operating Engineers Apprenticeship Program shall receive the following percentage of the Group 4 rate set forth in Section 01.03.00:

1st Period Apprentice — 55%

2nd Period Apprentice — 60%

3rd Period Apprentice — 65%

4th Period Apprentice — 70%

5th Period Apprentice — 85%

The Apprentice wage rate to be calculated at 55% of the Group 4 wage rate shall apply to the one thousand (1,000) hours of on-the-job training described below (1st Period).

*1st Period.* The 1st Period for the Construction Equipment Operator Branch shall consist of twelve hundred (1,200) hours. Two hundred (200) hours of orientation training at a designated training center in the following: Apprenticeship orientation, safety, grade setting, lubrication, general maintenance, and introduction to the following categories: track-type equipment, rubber tire-type equipment, hoisting-type equipment and stationary-type equipment. One thousand (1,000) hours of the 1st Period will be on-the-job training, employed by a participating or contributing Employer.

*07.06.03*   Applicants selected for Apprenticeship by the Joint Apprenticeship Committee may request evaluation by the appropriate Joint Apprenticeship Committee to receive credit which may be applicable for past experience. The Joint Apprenticeship Committee may determine through evaluation whether the Apprentice shall be a First (1st) through Fifth (5th) Period Apprentice and shall be paid the appropriate percentage as set forth in Section 07.06.02.

*07.06.04*   Apprentice manning shall be in conformance with the schedule as set forth in this Agreement.

A.   Each Individual Employer who employs nine (9) Journeyman Operating Engineers on all work covered by this Agreement, shall have a minimum of one (1) Apprentice employed, if available. Thereafter, the Individual Employer shall include an additional Apprentice for each nine (9) Journeyman Operating Engineers employed after the first nine (9) on all work covered by this Agreement. The following exempt Employees will not be considered Journeyman Operating Engineers in determining the number of Journeyman Operating Engineers employed for the purposes of this paragraph.

**Exempt Employees include:**

1. Foremen not operating equipment or working with the tools of the trade and/or Superintendent
2. Assistant Engineers
3. Preferred List Journeymen
4. Journeymen working outside the 46 Counties
5. Employees not Journeymen Operating Engineers (i.e. office employees)

Master Crane Rental
May 9, 2007-sac – REVISED

6. Apprentices
7. Journeymen not performing covered work (i.e. training, supplemental related training, Estimators, Exempt Code 7)
8. Owner-Operators

Notwithstanding the other provisions of this paragraph, the Individual Employer shall comply with the California Labor Code when performing publicly-funded work.

B. The Joint Apprenticeship Committee established by the parties to this Agreement shall have the responsibility for establishing a referral procedure for Apprentices in conformance with the training standards. The Union shall dispatch all Apprentices in accordance with the procedure established by the Joint Apprenticeship Committee. The cost of dispatching Apprentices shall be borne entirely by the Joint Apprenticeship Trust.

*07.06.05* *Apprentice Manning Non-Compliance.* In the event a District Representative or Apprentice Coordinator of the Union determines that an Individual Employer currently has no Registered Apprentice(s) employed or less than the number required, the District Representative or Apprentice Coordinator shall notify the Employer and the Individual Employer in writing of the non-compliance and indicate that the Union has Apprentices available for dispatch. The Individual Employer will have ten (10) working days to comply after receipt of notice if the Union has apprentices available for dispatch. The District Representative or Apprentice Coordinator shall meet with the Individual Employer during the ten (10) working day period. Failure to comply within ten (10) working days shall subject the Individual Employer to a penalty of four hundred dollars ($400) per work day (from the date written notice was received) for each day of non-compliance, up to a maximum of ten (10) days. Penalties shall be paid to the Operating Engineers' Affirmative Action Trust Fund.

*07.06.06* *Apprentice Manning Oversight Panel.* The parties recognize that some Individual Employers may not be able to provide safe, meaningful training for Apprentices. Further, there may be violations or disputes under these provisions that will require review and action. Therefore, an Apprentice Manning Oversight Panel is established for the purpose of considering the following:

1) If safe apprentice training is not available
2) If meaningful apprentice training is not available
3) Deviations from these apprentice manning provisions
4) Interpretations of these apprentice provisions
5) Individual Employer compliance
6) Individual Employer extensions
7) Categorical work-style exemptions (i.e. sweepers, grinders, pumpers, etc)

The Apprentice Manning Oversight Panel shall consist of two (2) representatives of the Union and two (2) representatives of the Employer. A minimum of one (1) Employer representative shall serve on any issue relating to one of its Individual Employers. The Apprentice Manning Oversight Panel shall be empowered with the same powers of resolution provided to a panel convened for grievances with a specific and exclusive focus on apprenticeship manning and dispatch. No employment related matters for Individual Employees may be presented to the Oversight Panel. If the Oversight Panel is unable to resolve questions of interpretation or issues other than safe meaningful training, said matters shall be subject to Section 18.00.00 "Provisions Governing Right to Arbitrate." The provisions of this paragraph shall apply to all Employers. All decisions of the Apprentice Manning Oversight Panel shall be in writing and distributed to all Individual Employers.

*07.06.07* When such Registered Apprentice completes the total apprenticeship training, such Registered Apprentice may return as a Journeyman to any Individual Employer for whom he/she has previously worked if the Individual Employer so requests him and if no Journeyman is laid off or replaced by the employment of such Employee. The employment of the Journeyman as outlined above shall be in compliance with the Job Placement Regulations.

*07.06.08*   A Registered Apprentice may be assigned (subject to the control of the Joint Apprenticeship Committee) to operate equipment or perform work covered by this Agreement, provided that the Registered Apprentice is under the supervision of a Journeyman. The utilization of Registered Apprentices to operate equipment or perform work shall be in accordance with approved Apprenticeship Standards.

*07.06.09*   In the event there are no Assistant to Engineers or Preferred Classification Employees registered or available for work in an Assistant to Engineer classification, a Registered Apprentice shall be dispatched in lieu thereof. However, when so employed, the Registered Apprentice shall receive the applicable Registered Apprentice rate or the applicable Assistant to Engineer rate, whichever is greater; provided, however, a Registered Apprentice being utilized as an Assistant to Engineer is subject to the provisions set forth in Section 04.10.06(b) of the Job Placement Regulations.

Tentative Agreements show: In the event there are no Assistant to Engineers or Preferred Classification Employees registered or available for work in an Assistant to Engineer classification, a Registered Apprentice shall be dispatched in lieu thereof. However, when so employed, the Registered Apprentice shall receive the applicable Registered Apprentice rate for the first eighty (80) hours provided, however, a Registered Apprentice being utilized as an Assistant to Engineer is subject to the provisions set forth in Section 04.10.06(b) of the Job Placement Regulations.

*07.06.10*   *Selection Procedures.* All Apprentice applicants entering the Apprenticeship Program shall be subject to the Selection Procedures in the Apprenticeship Standards of the Joint Apprenticeship Committee for Operating Engineers for the 46 Northern Counties in California.

*07.06.11*   *Orientation Training.* All Apprentices entering the Apprenticeship program shall receive orientation training at a designated training center pursuant to a curriculum developed by the Joint Apprenticeship Committee. Such participation in the Orientation Training shall be at the discretion of the Joint Apprenticeship Committee.

*07.06.12*   The KRA (Crane) Apprenticeship Program shall be modified to provide that an Apprentice who has completed the Crane Apprenticeship Program shall be allowed to work as a Truck Crane Assistant Engineer to complete such further training as may be necessary to become a fully qualified Truck Crane Operator.

*07.06.13*   *Foremen Exemption.* In the event that an Individual Employer has an occasional or temporary requirement for a Foreman, a Journeyman Operator who is currently employed at the jobsite may be assigned to perform the work of a Foreman without the necessity of obtaining a dispatch, subject to the following conditions:

1. Any application for retroactive relief under the provisions of this Section shall not be considered for any work performed prior to August 1, 1977.

2. During any period of time an Employee is assigned to work as a Foreman, said Foreman may not operate equipment or use the tools of the trade, except as otherwise provided in this Agreement.

3. The Individual Employer when submitting his Employer's Report of Contributions shall specifically designate actual time worked as a Journeyman and actual time worked as a Foreman. Appropriate exempt codes shall be provided by the Employer.

4. Any request for retroactive relief under the provisions of this Section must be submitted by the Individual Employer in writing to the Union. The Individual Employer in such request must provide the specific details of the job or project including the names of the affected Employees, their Social Security Numbers, Apprentice Manning Exempt Codes, and all hours worked consistent with previously reported data.

5. Any Individual Employer violating the provisions of this Section by claiming Foreman exempt hours when in fact such hours were worked by an Employee performing work as a Journeyman, may upon the decision of the Committee provided for in Section 07.05.04(9), be required for a period of one (1) year to have all Foremen dispatched through the Job Placement Center.

6. Any disputes which may occur with respect to an Individual Employer claiming Foreman exempt hours shall be settled in accordance with the procedure provided for in Section 07.05.04(9) of this Agreement between the Employer and the Union.

Master Crane Rental
May 9, 2007-sac – REVISED

*08.00.00*   **TOOLS**

*08.01.00*   *Tools.* The Individual Employer shall provide on each jobsite a secure place where his Heavy Duty Repairman may keep his tools. If all or any part of a Heavy Duty Repairman's kit of working tools is lost by reason of the failure of the Individual Employer to provide such a secure place, or by fire, flood, or theft involving forcible entry while in the secure place designated by the Individual Employer, the Individual Employer shall reimburse such Heavy Duty Repairman for any such loss from a minimum of one hundred dollars ($100.00) to a maximum of five thousand dollars ($5,000.00). In order to obtain the benefits of this Section, a Heavy Duty Repairman must provide the Individual Employer with an inventory of his tools at the time he commences work and additional inventory whenever the Heavy Duty Repairman acquires additional tools.

*08.01.01*   Heavy Duty Repairmen shall furnish their own hand tools, but special tools shall be furnished by the Individual Employer as needed, such as: Pin Presses, Spanner Wrenches, Air or Electric Wrenches, testing and measuring devices other than a hand rule, Gear and Bearing Pullers, Electric Drills, Reamers, Taps and Dies, Oxyacetylene Hoses, Gauges, Torches and Tips, Torque Wrenches, twenty-four-inch (24") Pipe Wrenches or Socket Wrenches, and Sockets requiring over three-quarter-inch (3/4") drive, box-end wrenches over 1" and open-end wrenches over 1". Heavy Duty Repairmen and/or the Registered Apprentices shall be entitled to a tool pick-up time before the end of each shift, which shall not be less than five (5) minutes or more than fifteen (15) minutes.

*09.00.00*   **SERVICING OTHER CRAFTS**

*09.01.00*   When Employees covered by this Agreement are employed on a job or project where another craft or crafts work a shorter day, such Employees shall be afforded the opportunity to earn an amount equal to a full shift or full day, as the case may be, at the applicable straight-time wage rate.

*09.02.00*   When Employees perform work covered by this Agreement in conjunction with another craft that receives overtime for any period of time between 8:00 a.m. and 4:30 p.m., Monday through Friday, they shall be compensated on the same basis.

*09.03.00*   *Overtime.* Employees servicing a Craft or Crafts receiving more than one and one-half (1-1/2) times the applicable straight-time rate shall receive the same overtime rate as the Craft they service.

*10.00.00*   **SUBSISTENCE AND TRAVEL, RENTED EQUIPMENT**

*10.01.00*   Operating Engineers employed by an Individual Employer who is regularly engaged in the business of renting cranes, truck cranes, hoisting equipment, gradalls, truck-mounted pavement breakers, or truck-mounted earth augers, on a fully-operated basis, shall receive in addition to their regular and overtime wages, a daily subsistence as follows:

(1) On any job location or project more than thirty-five (35) miles from the permanent yard of the Individual Employer, an Employee shall receive twenty-five dollars ($25.00) per day expenses.

(2) On any job location or project where an Employee(s) travels more than seventy-five (75) miles from the permanent yard of the Individual Employer and stays overnight (at the Employee's option), said Employee(s) shall receive the actual cost of lodging (receipt required) plus forty dollars ($40.00) per day expenses. On Friday, or the last day of the job or project, Employee(s) will receive forty dollars ($40.00) subsistence.

*10.01.01*   Within thirty (30) days of the execution of this Agreement, any such Individual Employer having more than one (1) yard shall notify the Union, in writing, of the location of his permanent yard, or permanent yards. Such locations can be changed once each year by giving written notice to the Union. Such payments for subsistence shall be excluded from the wages of the Employee for the purpose of the Fair Labor Standards Act.

*10.01.02*   No subsistence shall be paid on any job when the Employee's time starts and ends at the Individual Employer's permanent yard without any break in compensable hours except for meal periods.

*10.02.00*   On jobs on which an Employee does not receive subsistence, the understanding of the undersigned parties is as follows:

*10.02.01*    An Employee shall not receive travel time or travel expense except under 10.03.00 and 10.04.00 below.

*10.03.00*    *Travel Expense.* Where the Employee is transported on the Individual Employer's equipment, travel expense shall not be due.

*10.03.01*    Travel expense will be paid when moving cranes from yard to job, job to yard and job to job when crane is not returned to its original starting point at the end of the day, and when the Employee receives travel time under 10.04.00.

*10.03.02*    Travel expense, when due an Employee furnishing his own transportation, shall be paid mileage reimbursement to match the current IRS rate which will be determined annually and effective July 1, and the Individual Employer shall also pay bridge, ferry or toll fares involved; provided that no Employee shall be required to furnish the means of transportation as a condition of employment for the purpose of transporting Employees, fuel, rigging gear or tools.

*10.04.00*    *Travel Time.* On any day on which an Employee is required to report to the yard, the Employee's time will start at the yard. On any day on which the Individual Employer requires an Employee to return to the yard and when, absent a pre-arrangement to cover transportation under 10.03.01, an Employee is required to report to the yard on that date, an Employee's time will end at the yard.

*10.05.00*    Travel time, except equipment transportation, shall be at the straight-time rates. Travel time shall be computed at the actual time spent in traveling; however, such travel time shall not exceed the rate of thirty-five (35) miles per hour. Travel in pickups and passenger vehicles is not "equipment transportation" for the purposes of this Section.

*11.00.00*    **FRINGE BENEFITS**

*11.01.00*    *General Provisions.* The Individual Employer will make the following payments for each hour worked or paid each Employee by an Individual Employer covered by this Agreement. Such payments shall be paid by each Individual Employer for each hour worked or paid each Employee of such Individual Employer on or before the 15th day of the month following the month in which such Employee was employed by such Individual Employer, and an Individual Employer shall be delinquent if such Individual Employer's Report and payment is not received by the bank prior to midnight of the 25th day of that month. All such payments shall be made at Alameda, California, at the time (as set forth above) and in the manner provided for by the applicable employer-Union Trust Agreement creating a Trust or, if not a Trust, at the time and in the manner provided for in this Agreement. Each Individual Employer is bound by all the terms and conditions of each Trust Agreement and any amendment or amendments thereto which are incorporated by reference herein. The Union and the Employer agree that these plans are and have been defined contribution plans.

*11.01.01*    In the event a National Health Act is enacted, the parties shall meet for the purpose of endeavoring to eliminate any duplicate coverage and cost which may apply to the Individual Employer.

*11.02.00*    *Health and Welfare and Sick Benefits.* Each Individual Employer covered by this Agreement shall pay into the Operating Engineers' Health and Welfare Trust Fund for Northern California according to the following schedule:

    Effective July 1, 2006 — Six dollars and fifty-eight cents ($6.58) per hour

    Effective July 1, 2007 — Six dollars and ninety-one cents ($6.91) per hour

*11.02.01*    Should it be actuarially determined that Health and Welfare Trust Fund reserves have fallen below amounts necessary to maintain a six (6) month level of benefits, the Employer and the Union will meet and take whatever action is necessary to insure adequate reserves. However, any increase to contributions shall come from existing or previously negotiated increases. Nothing set forth herein shall contravene or be deemed to be in conflict with the National Health Act Clause.

*11.03.00*   *Pensioned Health and Welfare.* Each Individual Employer covered by this Agreement shall pay into the Pensioned Operating Engineers' Health and Welfare Trust Fund according to the following schedule:

    Effective July 1, 2006 — Two dollars and fourteen cents ($2.14) per hour

*11.04.00*   *Pensions.* Each Individual Employer covered by this Agreement shall pay into the Operating Engineers' Pension Trust Fund according to the following schedule:

    Effective July 1, 2006 — Five dollars and nineteen cents ($5.19) per hour

    Effective July 1, 2007 — Six dollars and twenty-three cents ($6.23) per hour

*11.04.01*   Each Individual Employer covered by this Agreement shall pay into the Operating Engineers' Pension Trust Fund according to the following schedule for Apprentices effective July 1, 2007:

    1st Period — $4.59 per hour
    2nd Period — $4.59 per hour
    3rd Period — $4.59 per hour
    4th Period — $4.59 per hour
    5th Period — $4.59 per hour

*11.05.00*   *Affirmative Action.* Each Individual Employer covered by this Agreement shall pay into the Operating Engineers and Participating Employers Pre-Apprentice, Apprentice, and Journeyman Affirmative Action Training Fund according to the following schedule:

    Effective July 1, 2002 — Fifty-two cents ($.52) per hour

In addition to the above, the Individual Employer shall pay one dollar ($1.00) per hour for each hour worked or paid each Registered Apprentice into the Operating Engineers and Participating Employers Pre-Apprentice, Apprentice, and Journeyman Affirmative Action Training Fund.

*11.06.00*   *Vacation and Holiday Pay Plan.* Each Individual Employer covered by this Agreement shall pay into the Operating Engineers' Vacation and Holiday Pay Plan according to the following schedule:

    Effective July 1, 2002 — Two dollars and seventy cents ($2.70) per hour

*Registered Apprentices.* Each Individual Employer covered by this Agreement shall pay into the Operating Engineers' Vacation Holiday Pay Plan for Apprentices according to the following schedule:

    Effective July 1, 2002 — Two dollars and twenty cents ($2.20) per hour

*11.06.01*   Such payments to the Plan shall be made at Alameda, California, in accordance with and in the manner as provided in the Vacation and Holiday Pay Plan, Section 18.00.00.

*11.06.02*   *Complementary Dues.* The Employees may authorize, in writing, that a portion of said payments be paid to the Union as Complementary Dues.

*11.07.00*   *Annuity Fund.* Each Individual Employer covered by this Agreement shall pay into the Operating Engineers' Annuity Trust Fund according to the following schedule:

    Effective July 1, 2005 — One dollar and seventy cents ($1.70) per hour

    Effective July 1, 2007 — Two dollars ($2.00) per hour

*11.08.00*   *Contract Administration Fund.* Each Individual Employer covered by this Agreement shall pay into the Contract Administration Fund according to the following schedule:

    Effective July 1, 2002 — Twenty cents ($.20) per hour

*11.09.00*   *Industry Stabilization Fund.* Each Individual Employer covered by this Agreement shall pay into the Industry Stabilization Fund according to the following schedule:

    Effective July 1, 2002 — Six cents ($.06) per hour

*11.09.01*  Such monies shall be utilized to enhance the enforcement of prevailing wage laws through The Foundation for Fair Contracting within the geographic area covered by this Agreement.

*11.10.00*  *Job Placement Center and Market Area Committee Administration Fund.* Each Individual Employer covered by this Agreement shall pay into the Job Placement Center and Market Area Committee Administration Fund according to the following schedule:

> Effective July 1, 2002 — Ten cents ($.10) per hour

*11.11.00*  *The Crane Industry Labor Management Cooperative Trust Fund.* The parties will establish a Taft-Hartley Trust Fund after they agree upon the Trust Fund's purposes and operations. Pending the establishment of the Trust Fund, the parties will establish an escrow account in which the Individual Employer contributions for the Trust Fund provided herein shall be deposited. Each Individual Employer covered by this Agreement shall pay into the Trust Fund (the escrow account before the Trust Fund is established) according to the following schedule:

> Effective July 1, 2002 —Nine cents ($.09) per hour

*11.12.00*  *Supplemental Dues.* In addition to any amount specified as and for Vacation and Holiday benefits in Section 11.07.00 and 11.07.01 of this Master Agreement, the amount of ninety cents ($.90) per hour for each hour paid for or worked shall be added and specifically designated as Supplemental Dues. Annual increases to supplemental dues from the wage package in Section 01.03.00 shall not exceed ten cents ($.10) per year for the term of this agreement. Upon the execution of a proper authorization as required by law, the amount set forth shall be transmitted from the Vacation-Holiday benefit of each Employee performing work or being paid under this Agreement and shall be remitted directly to the Union. These amounts specified herein shall not be deemed to be part of the Vacation-Holiday benefit but is an amount specifically agreed to as a Supplemental Dues benefit. The amount of the Supplemental Dues transmittal shall be specified on a statement sent to the Employees. Such remittance shall be made to the Union monthly. Supplemental Dues are specifically part of the uniform monthly dues of each Employee, as specified in the provisions of Section 04.02.00, Union Security, of this Agreement. The Employees shall be obligated to make such payment directly to the Union on a monthly basis if the dues authorization provided for herein is not executed, under such terms and conditions as from time to time may be prescribed by the Union.

*11.13.00*  *Delinquencies.* It is agreed that insofar as payments by the Individual Employer are concerned, the parties recognize and acknowledge that the regular and prompt payment of amounts due each Trust by Individual Employers is essential and, based upon prior experience of the parties hereto and in light of the substantial but varied expense incurred in the administration of said Trusts due to delinquencies, the parties agree that it is extremely difficult, if not impracticable to fix the actual expense and damage to each Trust, program and Employee which results from the failure of an Individual Employer to make the payments in full within the time provided. Therefore, it is agreed that the amount of damage resulting from any such failure shall be by way of liquidated damages and not as a penalty to each such Trust the sum of thirty-five dollars ($35.00) or fifteen percent (15%) of the amount due and unpaid to each such Trust, whichever is greater, for each failure to pay in full within the time provided. Such liquidated damages shall become due and payable to each such Trust in Alameda, California, at such place as each such Trust has from time to time been determined, upon the day immediately following the date on which the Individual Employer becomes delinquent, and shall be added to and become a part of said amount due and unpaid, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid.

*11.13.01*  In addition, if a delinquent Individual Employer agrees to pay its delinquency in installments and fails to make such payments in the amount and at the time and place agreed, it is agreed that the amount of damage to each Trust resulting from any such failure shall be by way of liquidated damages and not as a penalty to each such Trust, the sum of thirty-five dollars ($35.00) or fifteen percent (15%) of the amount due and unpaid to each such Trust, whichever is greater, for each such failure to pay in full within the time provided, which amount shall become due and payable to each such Trust in Alameda, California, at the place and time agreed upon, and shall be added to and become a part of said amount due and unpaid, and the whole thereof shall bear interest at the rate of twelve percent (12%) per annum until paid.