negative result may be accepted and the applicant may be put to work with no further testing required. A non-negative (inconclusive) result will subject the applicant to the Standard Procedures in this Agreement.

## VIII. EMPLOYER REFERRALS

A decline in an Employee's job performance is often the first sign of a personal problem which may include substance abuse or chemical dependency. Supervisory personnel will be trained to identify signs of substance abuse, chemical dependency, and declining job performance. The Individual Employer may formally refer an Employee to ARP based upon documented declining job performance or other observations prior to testing under Section VII and/or disciplining the Employee.

## IX. EMPLOYEE VOLUNTARY SELF-HELP PROGRAM

An Employee who has a chemical dependency and/or abuses drugs and/or alcohol is encouraged to participate in an Employee Voluntary Self-Help Program. Any such Employee shall be referred to ARP. Employees who seek voluntary assistance for alcohol and/or substance abuse may not be disciplined for seeking such assistance. Request by Employees for such assistance shall remain confidential and shall not be revealed to other Employees or management personnel without the Employee's consent. ARP shall not disclose information on drug/alcohol use received from an Employee for any purpose or under any circumstances, unless specifically authorized in writing by the Employee.

The Individual Employer shall offer an Employee affected by alcohol or drug dependence an unpaid medical Leave of Absence for the purpose of enrolling and participating in a drug or alcohol rehabilitation program.

## X. PROHIBITED ACTIVITIES/DISCIPLINE

An Employee shall not possess, use, provide, dispense, receive, sell, offer to sell, or manufacture alcohol and/or any controlled substances as defined by law or have any measurable amount of any such substance or by-product thereof as defined in Section VI while on the Individual Employer's property or jobsite and/or while working for the Individual Employer unless the Employee has the Individual Employer's express permission to do so. An Employee shall not work while impaired, intoxicated or under the influence of alcohol and/or any controlled substance. An Employee who uses medication prescribed by a physician will not violate these rules by using such medication as prescribed if the Employee's physician has released the Employee to work. An Employee who uses over-the-counter medication in accordance with the manufacturer's and/or doctor's recommendation shall not violate the rules by using such medication. Impairment caused by prescribed medication and/or over-the-counter medication does not constitute a violation. The Individual Employer may prohibit an Employee who is impaired as a result of proper use of prescription or over-the-counter medication from working while the Employee is impaired but may not discipline such an Employee. An Employee who is impaired by misuse of prescription or over-the-counter medication violates the Policy and is subject to discipline as provided herein.

## XI. REHABILITATION/DISCIPLINE

The Individual Employer may discipline an Employee who violates any provision of Section X. Such Employee is subject to disciplinary action up to and including termination. Among the factors to be considered in determining the appropriate disciplinary response are the nature and requirements of the Employee's work, length of employment, current job performance, the specific results of the test, and the history of past discipline.

The Individual Employer is not required to refer to ARP any Employee who violates any provision of Section X which prohibits the sale of, attempted sale of or manufacture of prohibited substances before it disciplines the Employee. The Individual Employer may not discipline any Employee who violates any other provisions of Section X until such Employee has been offered an opportunity to receive treatment and/or counseling.

Any Employee who fails to come forward to receive treatment and/or counseling prior to an accident, drug screen, for cause or random test shall not be eligible for the reemployment provisions of this Section XI.

Any Employee who comes forward to receive treatment and/or counseling prior to an accident, drug screen, for cause or random test shall be subject to reemployment as follows. The Employee will not be discharged if he/she agrees in writing to undergo the counseling/treatment ARP prescribes. The Individual Employer shall re-employ the

Employee when ARP releases him/her to return to work if it has work available. It will not be required to lay-off any current Employee in order to re-employ the Employee. If it does not have any work available when ARP releases the Employee, it shall re-employ the Employee as soon as it has work available. The Employee will be subject to a return-to-work agreement. The Individual Employer, the Union and the Employee will enter into a return-to-work agreement. The return-to-work agreement will require the Employee to comply with and complete all treatment ARP, or the treatment provider, as the case may be, determines is appropriate. It will also provide a monitoring of the Employee's compliance with the treatment plan ARP, or the treatment provider, develops and will allow the Individual Employer to require the Employee to submit to unannounced testing. The Individual Employer may discipline the Employee for not complying with the return-to-work agreement. A positive test on an unannounced test will be considered a violation of the return-to-work agreement. Any unannounced testing shall be performed in accordance with this Policy. The Union and the Individual Employer will attempt to meet with any Employee who violates the return-to-work agreement and attempt to persuade the Employee to comply with the return-to-work agreement. This procedure shall be followed on a consistent basis. Employees who are working under a return-to-work agreement shall be subject to all of the Individual Employer's rules to the same extent as all other Employees are required to comply with them.

The parties agree to establish a Substance Abuse Testing Procedures Committee who shall be empowered to periodically review and update testing procedures. Either party may request a meeting under this section and such meeting shall be convened within thirty (30) days.

## XII. NON-DISCRIMINATION

The Individual Employer shall not discriminate against any Employee who is receiving treatment for substance abuse and/or chemical dependency. All Employees who participate in ARP and/or are undergoing or have undergone treatment and rehabilitation pursuant to this Policy shall be subject to the same rules, working conditions, and discipline procedures in effect for all Employees. Employees cannot escape discipline for future infractions by participating in ARP and/or undergoing treatment and rehabilitation.

## XIII. COST OF PROGRAM

Evaluation and treatment for substance abuse and chemical addiction are provided for through the Health and Welfare Plan. An Individual Employer who adopts this Policy will not incur any additional cost for assessment, referral and treatment beyond that which is incorporated into its Health and Welfare contribution rate. ARP is funded through the Health and Welfare Trust to provide its current level of service which includes performing assessments of Employees and their covered dependents, referral of Employees and covered dependents who are undergoing rehabilitation and providing limited education and training programs to Individual Employer. The Individual Employer will pay all costs for testing.

## XIV. GRIEVANCE PROCEDURE

All disputes concerning the interpretation or application of this Policy shall be subject to the grievance and arbitration procedures of the Master Labor Agreement.

## XV. SAVINGS CLAUSE

The establishment or operation of this Policy shall not curtail any right of any Employee found in any law, rule or regulation. Should any part of this Policy be determined contrary to law, such invalidation of that part or portion of this Policy shall not invalidate the remaining portions. In the event of such determination, the collective bargaining parties will immediately bargain in good faith in an attempt to agree upon a provision in place of the invalidated portion.

FORM "A"

EMPLOYEE CONSENT AND RELEASE FORM

I, _____, have been directed by my employer, _____, to submit to a drug/alcohol screen (urine or blood for drugs other than alcohol or urine, blood or breath for alcohol) at a collection facility designated under the terms of the Substance Abuse Policy ("Policy") which is part of the collective bargaining agreement between my employer and Operating Engineers Local Union No. 3 (the "Local 3 Agreement") which governs my employment with my employer. The specimen shall be tested to detect the presence of Amphetamines, Cocaine, Cannabinoids (THC), Opiates, Phencyclidine, Barbiturates, Methaqualone and Alcohol. I consent to the following:

1. The facility which collects a specimen from me may do so;

2. The laboratory which performs the test may submit the results of the test to the designated Medical Review Officer and, if negative, as defined by the Policy, to my employer; and

3. The Medical Review Officer may verify the test and report to my employer whether the test was positive or negative, as defined by the Policy.

   In addition to Time of Dispatch testing, if I am directly or indirectly involved in a work-related accident involving property damage, bodily injury that requires medical care or work-related accidents which would likely result in property damage or bodily injury, I consent to be tested in accordance with the Policy. I also consent to be tested if my employer has probable cause to do so as set forth in the Policy. I also consent to be randomly tested in accordance with the Policy. I also consent to be tested if my employment is regulated by the United States Department of Transportation Code of Federal Regulations CFR 382 and 49 and my employer is required to test me under these regulations.

My employer has advised me that:
1. I have a right to have a Union Representative present if available;
2. I must sign this form and that I may be disciplined up to and including discharge if I do not;
3. The release is limited as provided herein; and
4. I have a right to consult with a Union Representative before I sign this release.

I am signing this Consent Form because I have been directed to do so by my employer. By doing so I am not waiving any rights I may have under the Local 3 Collective Bargaining Agreement or any applicable law except as expressly provided for herein. By signing this Agreement, I am not acknowledging that my employer has probable cause to believe I have violated any provision of the substance abuse policy which is part of the Local 3 Agreement or any of my employer's policies which pertain to my employment.

☐  I previously have received a copy of the Policy.

☐  My employer has provided me with a copy of the Policy.

_____

(Employee Signature)

_____    _____

(Employee Name [Please Print])                      (Date)

*Witness:*

_____    _____

(Witness Signature)                                 (Witness Name [Please Print])      (Date)

Master Crane Rental
May 9, 2007-sac – REVISED

FORM "B"

INCIDENT REPORT FORM

Employee Involved: _____

Date of Incident: _____ Time of Incident: _____

Location of Incident: _____

Employee's Job Assignment/Position: _____

Employee Notified of His/Her Right to Union Representation:  ☐ Yes    ☐ No

Date Notified: _____ Time Notified: _____

Witness to Incident: _____

Witness' Observation: _____
_____
_____
_____

Employee's Explanation: _____
_____
_____
_____
_____

Employee's Signature: _____ Date: _____

Witness' Signature: _____ Date: _____

Employer's Signature: _____ Date:
_____

   Title: _____

Action Taken: _____
_____

Date/Time Action Taken: _____

## EXHIBIT "B"
## OWNER-OPERATOR

*04.04.00*   *Owner-Operator.* Whenever "Owner-Operator" is used in this Section, it means Operating Engineer Equipment Operator-Employee only, and does not apply to a Heavy Duty Repairman/Welder or a Lubrication and Service Engineer or equipment (generators, welding machines, fixed drills, lathes, pickup trucks, grease trucks, lube trucks or trucks and trailers) used by them or either of them and necessary or advisable for the performance of any work of a Heavy Duty Repairman/Welder or Lubrication and Service Engineer. With respect to the classifications and equipment above excluded from this Owner-Operator clause, no such equipment shall be used on any job or project if such equipment is owned, rented, or leased by the Employee using such equipment or by a member of his immediate family.

*04.04.01*   This Section shall only apply to an Owner-Operator who has legal or equitable title to his or her equipment and who personally operates that equipment in the performance of his or her work.

*04.04.02*   This Section shall not apply to any other form of business entity, partnerships, limited partnerships, corporations, joint ventures, etc.

*04.04.03*   Any other business entity shall be subject to Section 05.00.00, APPLICATION TO SUBCONTRACTORS.

*04.04.04*   Any Owner-Operator who is a member of the Union in good standing and who possesses a valid contractor's license shall have the option of electing, in writing, not to be placed on the payroll of the Individual Employer. If said Owner-Operator elects not to go on the payroll, the Employer shall pay into the Pensioned Health and Welfare, Affirmative Action Trust Funds and Vacation and Holiday Pay Plan at the required contribution rates. The Individual Employer shall notify the Union of the option selected. Each of the Funds agrees to defend the legality of this Subsection in any action to which it is a party and each of the other parties to this Agreement specifically agrees to join in the defense of any action brought by any person or entity claiming that this Subsection is unlawful.

*04.04.05*   Any Owner-Operator who is not a member in good standing of the Union shall be on the payroll of the Individual Employer with full fringes being paid from the first (1st) day of employment.

*04.04.06*   The Individual Employer may not circumvent the provisions of this Section by utilizing Section 05.00.00, APPLICATION TO SUBCONTRACTORS to subcontract to operators of individually-owned and manned pieces of equipment. In the event that occurs, the Individual Employer shall be liable for full fringes plus twenty-five percent (25%).

*04.04.07*   Owner-Operators shall not be subject to the provisions of Sections 04.06.00 through 04.12.00 or be considered an Employee for the purposes of 04.10.24[ii] of the Job Placement Regulations of this Agreement, provided the Job Placement Center servicing the job or project shall be notified of the name, address and Social Security Number of the Owner-Operator within twenty-four (24) hours after the Owner-Operator reports for work regardless of how long he works.

*04.04.08*   In the event an Individual Employer has failed to notify the Job Placement Center servicing the job or project of the name, address and Social Security Number of the Owner-Operator within twenty-four (24) hours after the Owner-Operator has reported for work to said Individual Employer, and said Individual Employer is subsequently found by audit or otherwise to have violated any of the Owner-Operator provisions of Section 04.00.00 resulting in the failure to pay wages and/or fringes under this Agreement, such Individual Employer's liability under Section 14.04.00, of the Master Agreement for Equipment Rental, shall be for the payment of and amount equal to the wages, straight time and overtime, and fringe benefits that would have been paid by the Individual Employer but for the violation plus twenty-five percent (25%). Such liability shall be for not more than the sixty (60) day period prior to written notification by the Union to the Individual Employer and Employer notwithstanding any other provision of said Section 14.04.00 of the Master Agreement for Equipment Rental. Provided, however, if said Individual Employer can establish from records maintained in the normal course of

business that the Job Placement Center has received the required twenty-four (24) hour notice and is subsequently found to be in violation, the Individual Employer's liability for payment under Section 14.04.00, of the Master Agreement for Equipment Rental, shall be limited to fringe benefits only for not more than the sixty (60) day period prior to written notification by the Union to the Individual Employer and the Employer. Of the liquidated damages provided for in this Section, an amount equal to the amount of the fringe benefits, if any, that should have been paid but were not, shall be credited to the Owner-Operator; the balance shall be paid into the Operating Engineers' Pre-Apprentice, Apprentice and Journeyman Affirmative Action Training Fund.

*04.04.09*    The Individual Employer who utilizes an Owner-Operator shall provide, upon the request of any authorized agent of the Union, copies or original records made reflecting the hours worked, equipment used, and payments made by the Individual Employer to the Owner-Operator and on the Owner-Operator's behalf.

*04.04.10*    The Individual Employer expressly reserves the right to control the details of the manner, time and means by which the Owner-Operator performs his services, as well as the ends to be accomplished, and shall be the sole judge of the capability of the Owner-Operator's equipment to perform the work required to be performed, and may, if the Individual Employer determined that the Owner-Operator's equipment is not capable of performing the work required to be performed, terminate such Owner-Operator's services. Failure to work the day or half-day out as directed shall terminate the Owner-Operator's employment, and he shall be paid only for actual time worked prior to such failure. The Individual Employer shall not pay for time spent by the Owner-Operator in repairing, servicing or maintaining his equipment after termination of employment, or before or after his shift, as the case may be.

*04.04.11*    Any Owner-Operator who employs Operating Engineers under a subcontract with an Individual Employer signatory to a collective bargaining agreement with the Union shall comply with the terms of Section 05.00.00.

*04.04.12*    If an Owner-Operator who meets the criteria set forth in 04.04.04 above elects not to go on the payroll of the Individual Employer, the parties agree that the Owner-Operator shall be compensated in an amount equal to the total hourly compensation rate that would have been paid an Employee of the Individual Employer performing similar work plus a reasonable rate for rental of the Owner-Operator's equipment. For the purpose of this provision, the total hourly compensation rate referenced above shall include the applicable wage rate plus the amount that would have been contributed on an Employee's behalf to the Pension Trust Fund, Health and Welfare Trust Fund and Vacation and Holiday Pay Plan.

*04.04.13*    Any Owner-Operator who has elected to go on the payroll of the Individual Employer shall be governed by the terms of this Agreement as written, and each such Owner-Operator must specifically waive any claim of exemption from any provision of said Agreement based upon an assertion of independent contractor status. Any Owner-Operator member who elects to not go on the payroll must waive any claim of Employee status and rights under 29 United States Code 157.

*04.04.14*    Compensation for the equipment shall be by check for the full amount due, less any agreed advances. A statement of any charges by the Individual Employer shall be issued at the same time.

*04.04.15*    The Owner-Operator shall provide and have sole responsibility for fuel, oil, grease, tires, tubes, repairs, and any other items necessary to operate his equipment. He shall have complete freedom to purchase any such items at any place where efficient service and satisfactory products can be obtained at the most favorable prices.

*04.04.16*    There shall be no interest or handling charge on earned money advanced prior to the regular payday.

*04.04.17*    The provisions of this Section have been negotiated and agreed upon by and between the parties for the objects and purposes expressed in 04.04.19. The parties have not undertaken to negotiate for the Owner-Operator-Employees any profit whatsoever for the leasing and rental of the equipment they operate. On the contrary, compensation for the equipment shall be set by agreement between the Individual Employer and the Owner-Operator at a level which will not circumvent or defeat the payment of wages and fringe benefit payments and conditions of any Employee covered by this Agreement.

*04.04.18*   There shall be no reductions by reason of the signing of this Agreement where the present basis of payment is more favorable to the Owner-Operator than the basis provided for herein.

*04.04.19*   It is further mutually understood and agreed that the intent of this Section is to assure the payment of wages, subsistence and fringe benefit payments and the observance of the conditions provided in this Agreement, and to prohibit the making and carrying out of any plan, scheme or device to circumvent or defeat the payment of wages, subsistence and fringe benefit payments and the observance of the conditions provided in this Master Agreement.

*04.04.20*   It is further agreed that the Individual Employer will not devise or put into operation any scheme, whether herein enumerated or not, to defeat the terms of this Section of this Agreement, nor shall any Owner-Operator's arrangement with an Individual Employer be entered into for the purpose of depriving any other Employee of employment. In the event that the Individual Employer has available equipment on the job during the period of the repair of the Owner-Operator's equipment, and for a period not to exceed two (2) shifts and so long as no other Employee is laid off to provide work for such equipment, an Owner-Operator may be assigned to operate equipment not furnished by him, but except under such circumstances the Owner-Operator shall be exclusively assigned to the equipment furnished by him.

*04.04.21*   Reckoning of time on an Owner-Operator's last day of employment shall be as follows: All time worked during the first (1st) four (4) hours shall be reckoned by the half-shift. All time worked beyond the first four (4) consecutive hours shall be reckoned by the hour.

*04.04.22*   Notwithstanding any other provision of this Agreement, an Owner-Operator who has worked as an employee (or as an Employee) shall be subject to 04.02.00 after seven (7) days' employment by the Employer and/or one (1) or more Individual Employers. No Owner-Operator shall have any right to enforce this Agreement by grievance, arbitration or otherwise until he has been placed on the payroll of an Individual Employer as an Employee.