*18.05.00* Liability of Individual Employer. Neither the Employer nor any Individual Employer shall be liable for the payments due from any other Individual Employer or for any of the expenses of administering this Plan.

*18.06.00* Records. The Fund Manager will maintain all records necessary to carry out this Vacation and Holiday Pay Plan and supply the Operating Engineers Local Union No. 3 Credit Union at all times with the records necessary and proper to enable it to properly and accurately credit each Employee and issue to each Employee shares as in this Plan provided. The Fund Manager shall comply with all requirements of law and make and file any and all reports required by law. He shall be entitled to act through agents specifically authorized by him in writing who if they handle funds shall be properly bonded.

*18.07.00* Delinquent Accounts. The Fund Manager shall not be responsible or liable for the collection of delinquent accounts. However, in the event the Fund Manager should desire so to do, he is empowered so to do, and any expense thereby incurred shall be a proper expense of this Plan.

*19.00.00* **TERM OF AGREEMENT**

*19.01.00* Employer's Membership. This Agreement is made for and on behalf of and shall be binding upon the Employer, any Association of Employers signatory hereto, and the Individual Employers as defined in 02.02.00.

*19.01.01* The Employer and each Association of Employers signatory hereto represents that upon the date of the execution of this Agreement, the Employer or Association of Employers signatory hereto, as the case may be, represents its members, Individual Employers as defined in 02.02.00, and that said Individual Employers have duly authorized it to make this Agreement for and on their behalf as parties hereto.

*19.02.00* Agreement Binding Upon Parties. This Agreement shall be binding upon the heirs, executors, administrators, successors, purchasers and assigns of the parties hereto.

*19.03.00* Effective and Termination Dates. This Agreement, and its extension/amendment, shall be effective July 1, 2006, and shall remain in effect through June 30, 2010, and if the written notice provided by Section 8(d) of the National Labor Relations Act as amended is not given by either the Union or the Employer to the other, it shall continue indefinitely; provided however, this Agreement may be terminated at any time after June 30, 2010, by either the Union or the Employer giving to the other the written notice provided by Section 8(d) of the Act in which event this Agreement shall terminate at the end of the sixtieth (60th) calendar day after receipt of such notice. Regardless of when terminated, the Union and Employer will negotiate exclusively with each other during the last sixty (60) days of the Agreement.

*IN WITNESS WHEREOF*, the parties hereto set their hands and seals by their respective officers duly authorized to do so this _____ day of _____, 2006.

EMPLOYER:

CRANE OWNERS ASSOCIATION, INC.

UNION:

OPERATING ENGINEERS LOCAL UNION NO. 3 of the International Union of Operating Engineers, AFL-CIO

_____
Signature

_____
President

_____
Signature

_____
Recording-Corresponding Secretary

_____
Signature

_____
Business Manager

_____
Signature

_____
Vice President

_____
Signature

_____
Special Representative

_____
Signature

_____
Signature

NOTE: The following is the decision of a Board of Adjustment dated January 9, 1984, relative to the payment of travel and subsistence for jobs over thirty-five (35) miles from the Employer's yard.

Post Office Box 1005
Tiburon, Calif. 94920

**CRANE OWNERS' ASSOCIATION, INC.**

ROBERT H. SCARTH, EXECUTIVE SECRETARY

MINUTES —    Monday, January 9, 1984 Meeting
Operating Engineers Local #3
Crane Owners Association Members
San Francisco, California

The purpose of the meeting was relative to several grievances filed by Operating Engineers Local #3 regarding the payment of travel and subsistence under the Master Agreement for Equipment Rental.

Those in attendance were as follows:

LOCAL # 3 —   Don Kinchloe, Norris Casey,
Bill Dorresteyn, Ted Wright

CRANE OWNERS ASSOCIATION — Mike Geister, Steve Lyons, Charles Giguere, Adolph Battaini, Bill Johns and Rich Wheeler

There was a general discussion relative to various grievances that had been filed against Crane Owner Members. The grievances have been filed against Marin Storage & Trucking, Husky Crane, Inc. and Sheedy Drayage Company. This meeting was not considered a formal grievance hearing but an investigation of the problems and an attempt to find a mutual agreement.

After a discussion, it was agreed that the grievances probably resulted from situations where the Crane Operator or the Oiler were putting in for subsistence on jobs that were over thirty-five (35) miles, but that transportation was furnished to the crew. Each Company explained how they operated and how they furnished transportation (usually pickup trucks) and paid subsistence. In each case there was some difference. It was agreed that the intent of past negotiations was that when Company transportation is furnished and the Employer does not require that the Company transportation be returned to the yard at the end of the day, then the Employer is not required to pay subsistence for those jobs over thirty-five (35) miles. There were many hypothetical cases as well as specific examples discussed which could create inconvenience for either the Operator or the Oiler. However, it was generally agreed that it was impossible to negotiate travel and subsistence language that would cover all situations and be fair to both the Employee and Employer in all cases.

At the conclusion of the meeting, Management and Union agreed on the following:

When the Employer furnishes transportation to the crew for jobs that are over thirty-five (35) miles from the Employer's yard and the Employer does not require the Employee to return to the yard, the Employer is not required to pay travel expenses and subsistence. It was agreed that when the Employer furnishes transportation, the Company furnishes it to the crew and that the crew works out the logistics between themselves getting to and from the job. This does not change the Master Agreement for Equipment Rental regarding subsistence payments required under Section [10.01.00], Paragraph (2).

If the Employer requires the Employee to return to the yard, then the Employee would be entitled to subsistence.

The above understanding is in line with what has been previously negotiated and put into practice under the Master Agreement for Equipment Rental and does not constitute any change in the Contract.

/s/ Stephen P. Lyons            /s/ D.R. Kinchloe
Executive Director              Treasurer
Crane Owners Association        Operating Engineers Local #3

# EXHIBIT "A"

## JOINT LABOR MANAGEMENT SUBSTANCE ABUSE POLICY

### I. INTRODUCTION

The Union and the Employer establish this Policy in order to provide the Individual Employer with a comprehensive substance abuse program, to provide Employees who abuse and/or are addicted to drugs, including alcohol, a means to receive treatment for their abuse and/or addiction, and to provide for a safe workplace. An Individual Employer is not obligated by this Agreement to have a substance abuse policy. Implementation of this Policy is not mandatory by any Individual Employer, but this Policy is the only policy the Individual Employer may implement for Employees. Once implemented, the Policy shall remain in effect unless otherwise agreed to by the Union and the Individual Employer.

An Individual Employer which is regulated by the United States Department of Transportation ("DOT") Code of Federal Regulation CFR 382 and 49 may elect not to implement the testing provisions of this Policy for its Employees who are not regulated by DOT.

### II. NOTICE

A. An Individual Employer must give written notice to the Union that it is implementing this Policy. The notice must be delivered in person, by certified mail or by FAX before it implements the Policy. A DOT regulated Individual Employer shall specifically notify the Union whether it is implementing the testing provisions of this Policy for its Employees who are not subject to DOT regulations. The notice shall be delivered to the Union at the following address:

> Operating Engineers Local Union No. 3
>
> 1620 South Loop Road
>
> Alameda, CA 94502
>
> (FAX: [510] 748-7401)

B. The Individual Employer may not implement this Policy unless it subjects all management and supervisory employees to the same type of testing which is provided herein.

C. An Individual Employer who has implemented this Policy shall advise the Union dispatchers with whom it places an order for Employees that it intends to drug test dispatched Employees. A test result shall not be set aside because an Individual Employer does not give such notice.

D. An Individual Employer who implements this Policy shall provide written notice of this Policy to all Employees including those dispatched to it by the Union and shall provide each Employee with a copy of the Policy.

E. Failure to give a form of notice as set forth in this section shall make any drug testing engaged in by the Individual Employer a violation of the Master Agreement and no results of any such test shall be relied upon to deny employment or pay or to discipline any Employee.

### III. PURPOSE OF POLICY

A. The Individual Employer and the Union are committed to providing a safe and productive work environment for Employees. The Employer, Individual Employer and the Union recognize the valuable resource we have in our Employees and recognize that the state of an Employee's health affects attitude, effort, and job performance. The parties recognize that substance abuse is a behavioral, medical and social problem that causes decreased efficiency and increased risk of accidents and of injury.

The Individual Employer and the Union therefore adopts this Policy. The intent of the Policy is threefold:

1. To maintain a safe, drug and alcohol free workplace;
2. To maintain our work force at its maximum effectiveness; and
3. To provide confidential referral to the Addiction Recovery Program ("ARP") and to provide confidential treatment to those Employees who recognize they have a substance abuse problem and voluntarily seek treatment for it.

B. In order to achieve these purposes, it is our primary goal to identify those Employees and refer them to professional counseling, and treatment *before* job performance has become a disciplinary problem. Employees are urged to use the services available through ARP. ARP will assist them and refer them to the appropriate treatment program.

1. Treatment for substance abuse and chemical dependency is provided under the Health and Welfare Plan, up to the limits described in the plans.
2. An Employee shall be granted necessary leave of absence for treatment ARP recommends contingent upon signing a return-to-work agreement as provided for in Section XI.

## IV. EDUCATION PROGRAM

The Individual Employer will implement a comprehensive drug awareness and education program which shall be in conformance with the DOT regulations. The program shall include educating Employees and management/supervisory personnel about substance abuse and chemical dependency, the adverse affect they have on Employees and the Individual Employer, and the treatment available to Employees who abuse substances and/or are chemically dependent, and the penalties that may be imposed upon Employees who violate this Policy. The Individual Employer shall consult with ARP before it implements this policy so that ARP can provide education to the Individual Employer and its Employees. ARP shall continue to provide an educational program for the Individual Employer for their Employees and shall, to the maximum extent possible, train the Employees of Individual Employer who implement this Policy.

## V. CONFIDENTIALITY

The Individual Employer will abide by all applicable State and Federal laws and regulations regarding confidentiality of medical records in any matter related to this Policy. The Individual Employer shall designate one of its management, supervisory or confidential employees to be its custodian of records and contact person for all matters related to this Policy. All such records shall be kept in a locked file which shall be labeled "confidential." Employee records related to this Policy shall not be kept in the Employee's personnel file.

All information from an Employee's drug and alcohol test is confidential for purposes other than determining whether this Policy has been violated. Disclosure of test results to any other person, agency, or organization is prohibited unless written authorization is obtained from the Employee. The results of a positive drug test shall not be released until the results are confirmed. Every effort will be made to insure that all Employee issues related to this Policy will be discussed in private and actions taken will not be made known to anyone other than those directly involved in taking the action, or who are required to be involved in the disciplinary procedure.

## VI. TESTING

Testing for the presence of alcohol or controlled substances and/or their by-products in one's body may only be performed under the conditions set forth herein. All testing shall be done in accordance with the standards established by the Substance Abuse and Mental Health Services Administration ("SAMHSA"), any successor agency, or any other agency of the federal government which has responsibility for establishing standards for drug testing. All such agencies shall be collectively referred to as "SAMHSA."

*Chain of Custody.* All SAMHSA standards for Chain of Custody will be adhered to. A specimen for which the SAMHSA standards are not complied with shall not be considered for any purpose under this Policy.

*Laboratories.* All laboratories which perform tests under this Policy shall be SAMHSA certified.

*Testing Procedures and Protocols.* All SAMHSA standards for testing standards and protocols shall be followed. All specimens which are determined to be positive by the SAMHSA approved screening test shall be subject to a SAMHSA certified confirmatory test (gas chromatography/mass spectrometry).

*Second Test.* The laboratory shall save a sufficient portion of each specimen in a manner approved by SAMHSA so that an Employee may have a second test performed. Immediately after the specimen is collected, it will be labeled and then initialed by the Employee and a witness. If the sample must be collected at a site other than the drug and/or alcohol testing laboratory, the specimen shall then be placed in a transportation container. The container shall be sealed in the Employee's presence and the Employee shall be asked to initial or sign the container. The container shall be sent to the designated testing laboratory on that day or the earliest business day by the fastest available method. Any Employee whose specimen is tested positive and who challenges a test result may have the second portion of the sample tested at his/her expense and at a laboratory agreed upon by the Employee and the MRO so long as that laboratory is SAMHSA certified and has been or is approved by the parties and the Employee requests the second test within seventy-two (72) hours of notice of a positive result. If the second test is negative, the Employee will be considered to have been tested negative.

*Cut-Off Levels.* SAMHSA standards for cut-off levels will be complied with when applicable. The cut-off levels for both the screening and confirmatory tests shall be per Federal standards as determined by the U. S. Department of Health and Human Services ("DHHS"). Only tests which are positive pursuant to the SAMHSA standards shall be reported to the Medical Review Officer as positive. A .04 blood/alcohol level or above shall be considered to be positive.

*Medical Review Officer.* A Medical Review Officer ("MRO") shall verify all positive test results. The MRO must be a licensed physician. The MRO shall be a member of the American Society of Addictive Medicine ("ASAM") if available. If no ASAM members are available, the MRO shall be certified by the Medical Review Officers' Certification Council. The Union shall approve all MRO's. Upon verification of a positive test result, the MRO shall refer the affected Employee to ARP for assessment and referral to treatment, if appropriate.

*Consent Form.* Any Employee directed to submit to a test in accordance with this Policy will sign a consent and release form, a copy of which is attached hereto (Form "A"). The consent and release form will only authorize (1) the facility where the specimen is collected to collect the specimen, (2) the laboratory which performs the test to perform the test and to provide the results to the MRO, and, if negative, to the Individual Employer, and (3) the MRO to verify tests and report to the Individual Employer whether the test is positive or negative. The consent and release form shall notify the Employee that he/she may have a Union representative present if available.

The Employee may be disciplined if he/she refuses to sign the authorization if the Individual Employer has advised the Employee (1) he/she must sign it or he/she will be disciplined up to and including termination, (2) the release is limited as provided herein, (3) the Employee has a right to consult with a Union representative before signing the release and before submitting to the test. An Employee who believes the Individual Employer is improperly directing him/her to submit to a test may file a grievance under the Master Agreement. The test results will be disregarded if the Board of Adjustment or Arbitrator determines the Individual Employer was not authorized by this Policy to direct the Employee to submit to the test.

*Substances to be Tested For.* A specimen may be tested for alcohol, cannabinoids (THC), barbiturates, opiates, cocaine, phencyclidines (PCP), amphetamines, and methaqualone or the by-products of these substances. A specimen shall not be tested for anything else. If DOT revises its list of substances for which it requires Individual Employer to test, this Section will be revised to include those substances. The laboratory will report positive test results to the MRO. The MRO will verify whether the test is positive or negative. The MRO shall report to the Individual Employer whether the Employee tested positive or negative for one of these substances. The MRO will not identify the substance(s) for which the Employee tested positive unless specifically required to do so by DOT regulations.

*Urine, Blood, or Breath Test.* The Individual Employer may direct the Employee to submit to a urine test or at the Employee's request, a blood test for alcohol and/or other drugs, or a breath test for alcohol. An Employee who is unable to provide a urine sample within one (1) hour of being directed to do so, will submit to a blood test.

Case 3:07-cv-05323-CRB    Document 3-6    Filed 11/13/2007    Page 7 of 8

*Notification to Employer of Test Results.* The laboratory shall report negative test results to the Individual Employer. The laboratory will report positive test results to the MRO. The MRO will verify whether the test was positive or negative and will report the final results to the Individual Employer.

### VII. TYPES OF PERMISSIVE TESTING

A.  TIME OF DISPATCH TESTING

An Individual Employer may require an Employee to be tested for the presence in the Employee's body of one of the drugs or by-products thereof set forth above at the time the Employee is dispatched (on one of the first three (3) days of employment). It must test all Employees at the time they are dispatched if it tests any Employee. The Individual Employer shall put the Employee to work or pay the Employee pending the test results unless the Employee has been dispatched to a DOT regulated assignment and the Individual Employer does not have any work for the Employee to perform which is not subject to the DOT regulations or if it has probable cause to believe the Employee is impaired, intoxicated, or under the influence of a drug. The standards for probable cause are set forth below in Section B. If the Individual Employer does not allow an Employee to work pending the test results because it believes it has probable cause, it shall make the Employee whole for all lost wages and benefits if the Employee tests negative. Employees who test positive will be referred to ARP. The Individual Employer shall not be obligated to employ any such Employee after ARP releases the Employee to return to work but may employ such Employee under the terms of a return-to-work agreement. An Employee who refuses to submit to a drug/alcohol test when dispatched shall not be paid show-up time.

An Individual Employer may test Employees who are recalled from layoff as provided for in the Job Placement Regulations who have not worked for thirty (30) days. If the Individual Employer tests any Employee who is recalled, it must test all such Employees. An Individual Employer may test all Employees at the time they are dispatched under this Section except for those who are recalled.

*Time of Dispatch Screening by the Job Placement Center:* The parties shall establish a joint committee to determine whether there is a feasible means by which the Job Placement Centers can conduct the drug/alcohol screen before dispatching an Employee so that only Employees with a negative test will be referred.

B.  PROBABLE CAUSE TESTING

An Individual Employer may require an Employee to submit to a drug test as provided for in this Policy if it has probable cause that the Employee is impaired, intoxicated, and/or under the influence of a drug. Probable cause must be based on a trained Management Representative's (preferably not in the bargaining unit) objective observations and must be based upon abnormal coordination, appearance, behavior, absenteeism, speech or odor. The indicators shall be recognized and accepted symptoms of intoxication or impairment caused by drugs or alcohol and shall be indicators not reasonably explained as resulting from causes other than the use of such controlled substance and/or alcohol (such as, but not by way of limitation, fatigue, lack of sleep, side effects of proper use of prescription drugs, reaction to noxious fumes or smoke, etc.). Probable cause may not be established, and thus not a basis for testing, if it is based solely on the observations and reports of third parties. The trained Management Representative's observations and conclusions must be confirmed by another trained Management Representative. The grounds for probable cause must be documented by the use of an Incident Report Form (see Form "B" attached). The Management Representative shall give the Employee a completed copy of this Incident Report Form and shall give the Union Representative, if present, a copy of the Incident Report Form before the Employee is required to be tested. After being given a copy of the Incident Report Form, the Employee shall be allowed enough time to read the entire document and to understand the reasons for the test. The Management Representative also shall provide the Employee with an opportunity to give an explanation of his/her condition, such as reaction to a prescribed drug, fatigue, lack of sleep, exposure to noxious fumes, reaction to over-the-counter medication or illness. If available, the Union Representative shall be present during such explanation and shall be entitled to confer with the Employee before the explanation is required. If the Management Representative(s), after observing the Employee, and hearing any explanation,

Master Crane Rental
May 9, 2007-sac – REVISED

39

concludes that there is in fact probable cause to believe that the Employee is under the influence of or impaired by, drugs or alcohol, the Employee may be ordered to submit to a drug test.

The Individual Employer shall advise the Employee of his/her right to consult with a Union Representative (including a Steward) and allow the Employee to consult with a Union Representative before the Employee submits to the test, if the Union Representative is available.

Employees required to submit to a test under Section B will be paid for all time related to the test including the time the Employee is transported to and from the collection site, all time spent at the collection site, and all time involved completing the consent and release form if the test results are negative.

C.  ACCIDENT TESTING

An Individual Employer shall require Employees who are directly, or indirectly, involved in work-related accidents involving property damage or bodily injury that requires medical care or work-related accidents which would likely result in property damage or bodily injury be subject to a test as provided herein. The innocent victims of an accident will not be subject to a test unless probable cause exists. The Individual Employer shall complete an Incident Report Form (see Form B attached) whenever it tests an Employee under this Section.

D.  UNANNOUNCED RANDOM TESTING

An Individual Employer may initiate unannounced random testing, a selection process where affected Employees are selected for testing and each Employee has an equal chance of being selected for testing. If an Individual Employer initiates such testing, all Employees shall be subjected to such testing. The Individual Employer may establish two random testing pools; one for DOT regulated Employees and one for all others. An Individual Employer who initiates random testing shall specifically state in its notice to the Union and its notice to Employees that Employees will be subject to random testing. The Individual Employer shall give thirty (30) days notice to the Union and Employees prior to implementing a random drug testing program.

E.  DOT REGULATED EMPLOYEES

Notwithstanding any other provision of this Policy, the Individual Employer may require its Employees who are covered by the DOT drug and alcohol testing regulations to submit to testing as required by those regulations. Such testing will be conducted in strict accordance with the Regulations. The Individual Employer may discipline an Employee who tests positive as defined by the Regulations subject to Section XI, REHABILITATION/DISCIPLINE, of the Policy. ARP shall be the Substance Abuse Professional for all Employees. ARP, to the maximum extent possible, shall provide the mandated training to all Employees. Employees who are subject to DOT regulations who have a positive "pre-employment" test (as defined by the DOT regulations) will be paid show-up time only if the Individual Employer does not have any work for the Employee to perform which is not subject to the DOT regulations pending the test result. Employees who are tested under the DOT Regulations who are not allowed by those Regulations to continue to perform safety sensitive functions, as defined by the Regulations, shall be paid for hours worked.

F.  OWNER/AWARDING AGENCY REQUIREMENTS

Whenever owner or awarding agency specifications require the Individual Employer to provide a drug-free workplace, the Union and the Employer or the Individual Employer shall incorporate such additional requirements herein. This Policy shall apply to all such testing.

G.  QUICK TESTS

The parties agree to allow the Employers to use, on an individual basis, an oral or urine quick test approved by the bargaining parties as an effective low-cost tool for substance abuse screening for pre-hire, time of dispatch screening only. Testing procedures for the oral test (including the oral screen – OSR device) and the urine test shall be conducted in a manner consistent with the product manufacturer's specifications; in an effort to produce the most consistent and accurate results possible. Dispatched members who fail this saliva or urine test will be sent for standard urine testing. When the Individual Employer conducts the oral screen, a