deposit in the Operating Engineers Local Union No. 3 Vacation and Holiday Pay Plan as of March 31 (February Hours), and September 30 (August Hours) of each calendar year, shall be transferred by the Fund Manager of this Plan on or before May 15 and November 15 of each calendar year to a special account of Operating Engineers Local Union No. 3 Credit Union for the purchase of shares in the Credit Union for each such Employee. Shares so purchased shall be issued by the Credit Union to each such Employee as of May 31 and November 30 of each calendar year and any amount less than one (1) share shall be carried to the credit of each such Employee.

*18.04.06* In the event of the death or adjudicated incompetence of any Employee the monies credited to him, exclusive of interest, will be paid over to the beneficiary designated as such under the Pension Trust Fund for Operating Engineers upon presentation of a certified copy of the death certificate or order adjudicating incompetence to the Fund Manager or if no such beneficiary has been designated, to the authorized representative of the estate of the deceased Employee or to the guardian or conservator of the estate of the incompetent Employee or as otherwise provided in the Probate Code of the State of California.

*18.04.07* The Credit Committee of the Credit Union, not acting for the Credit Union but under this Plan, shall in emergency cases be empowered to direct the Fund Manager to immediately release the monies credited to the Employee concerned exclusive of interest, provided the total to be released is in excess of twenty-five dollars ($25.00). Said emergencies shall be limited to the extent that an Employee will be allowed no more than two (2) withdrawals per year, one (1) in each accumulation period, on an emergency basis subject to the approval of the Credit Committee.

*18.05.00* Liability of Individual Employer. Neither the Employer nor any Individual Employer shall be liable for the payments due from any other Individual Employer or for any of the expenses of administering this Plan.

*18.06.00* Records. The Fund Manager will maintain all records necessary to carry out this Vacation and Holiday Pay Plan and supply the Operating Engineers Local Union No. 3 Credit Union at all times with the records necessary and proper to enable it to properly and accurately credit each Employee and issue to each Employee shares as in this Plan provided. The Fund Manager shall comply with all requirements of law and make and file any and all reports required by law. He shall be entitled to act through agents specifically authorized by him in writing who if they handle funds shall be properly bonded.

*18.07.00* Delinquent Accounts. The Fund Manager shall not be responsible or liable for the collection of delinquent accounts. However, in the event the Fund Manager should desire so to do, he is empowered so to do, and any expense thereby incurred shall be a proper expense of this Plan.

*19.00.00* TERM OF AGREEMENT

*19.01.00* Employer's Membership. This Agreement is made for and on behalf of and shall be binding upon the Employer, any Association of Employers signatory hereto, and the Individual Employers as defined in 02.02.00.

*19.01.01* The Employer and each Association of Employers signatory hereto represents that upon the date of the execution of this Agreement, the Employer or Association of Employers signatory hereto, as the case may be, represents its members, Individual Employers as defined in 02.02.00, and that said Individual Employers have duly authorized it to make this Agreement for and on their behalf as parties hereto.

*19.02.00* Agreement Binding Upon Parties. This Agreement shall be binding upon the heirs, executors, administrators, successors, purchasers and assigns of the parties hereto.

*19.03.00* Effective and Termination Dates. This Agreement, and its extension/amendment, shall be effective July 1, 2003, and shall remain in effect through June 30, 2006, and if the written notice provided by Section 8(d) of the National Labor Relations Act as amended is not given by either the Union or the Employer to the other, it shall continue indefinitely; provided however, this Agreement may be terminated at any time after June 30, 2006, by either the Union or the Employer giving to the other the written notice provided by Section 8(d) of the Act in which event this Agreement shall terminate at the end of the sixtieth (60th) calendar day after receipt of such notice. Regardless of when terminated, the Union and Employer will negotiate exclusively with each other during the last sixty (60) days of the Agreement.

*IN WITNESS WHEREOF*, the parties hereto set their hands and seals by their respective officers duly authorized to do so this _____ day of _____, 2003.

EMPLOYER:                                    UNION:

CRANE OWNERS ASSOCIATION, INC.               OPERATING ENGINEERS LOCAL UNION
                                             NO. 3 of the International Union of
                                             Operating Engineers, AFL-CIO


_____              _____
Signature                                    President


_____              _____
Signature                                    Recording-Corresponding Secretary


_____              _____
Signature                                    Business Manager


_____              _____
Signature                                    Treasurer


_____              _____
Signature                                    Special Representative


_____
Signature


_____
Signature

NOTE: The following is the decision of a Board of Adjustment dated January 9, 1984, relative to the payment of travel and subsistence for jobs over thirty-five (35) miles from the Employer's yard.

Post Office Box 1005
Tiburon, Calif. 94920

**CRANE OWNERS' ASSOCIATION, INC.**

ROBERT H. SCARTH, EXECUTIVE SECRETARY

MINUTES —       Monday, January 9, 1984 Meeting
                Operating Engineers Local #3
                Crane Owners Association Members
                San Francisco, California

The purpose of the meeting was relative to several grievances filed by Operating Engineers Local #3 regarding the payment of travel and subsistence under the Master Agreement for Equipment Rental.

Those in attendance were as follows:

LOCAL # 3 —     Don Kinchloe, Norris Casey,
                Bill Dorresteyn, Ted Wright

CRANE OWNERS ASSOCIATION — Mike Geister, Steve Lyons, Charles Giguere, Adolph Battaini, Bill Johns and Rich Wheeler

There was a general discussion relative to various grievances that had been filed against Crane Owner Members. The grievances have been filed against Marin Storage & Trucking, Husky Crane, Inc. and Sheedy Drayage Company. This meeting was not considered a formal grievance hearing but an investigation of the problems and an attempt to find a mutual agreement.

After a discussion, it was agreed that the grievances probably resulted from situations where the Crane Operator or the Oiler were putting in for subsistence on jobs that were over thirty-five (35) miles, but that transportation was furnished to the crew. Each Company explained how they operated and how they furnished transportation (usually pickup trucks) and paid subsistence. In each case there was some difference. It was agreed that the intent of past negotiations was that when Company transportation is furnished and the Employer does not require that the Company transportation be returned to the yard at the end of the day, then the Employer is not required to pay subsistence for those jobs over thirty-five (35) miles. There were many hypothetical cases as well as specific examples discussed which could create inconvenience for either the Operator or the Oiler. However, it was generally agreed that it was impossible to negotiate travel and subsistence language that would cover all situations and be fair to both the Employee and Employer in all cases.

At the conclusion of the meeting, Management and Union agreed on the following:

When the Employer furnishes transportation to the crew for jobs that are over thirty-five (35) miles from the Employer's yard and the Employer does not require the Employee to return to the yard, the Employer is not required to pay travel expenses and subsistence. It was agreed that when the Employer furnishes transportation, the Company furnishes it to the crew and that the crew works out the logistics between themselves getting to and from the job. This does not change the Master Agreement For Equipment Rental regarding subsistence payments required under Section [10.01.00], Paragraph (2).

If the Employer requires the Employee to return to the yard, then the Employee would be entitled to subsistence.

The above understanding is in line with what has been previously negotiated and put into practice under the Master Agreement for Equipment Rental and does not constitute any change in the Contract.

/s/ Stephen P. Lyons                /s/ D.R. Kinchloe
Executive Director                  Treasurer
Crane Owners Association            Operating Engineers Local #3

CA New Master Equipment Rental
Contract type 13 – April 16, 004
opeiu-3-aflcio (3)
January 27, 2004;mer                         35

# EXHIBIT A
# JOINT LABOR/MANAGEMENT SUBSTANCE ABUSE POLICY

## I. INTRODUCTION

The Union and the Employer establish this Policy in order to provide the Individual Employers with a comprehensive substance abuse program, to provide Employees who abuse and/or are addicted to drugs, including alcohol, a means to receive treatment for their abuse and/or addiction, and to provide for a safe workplace. An Individual Employer is not obligated by this Agreement to have a substance abuse policy. Implementation of this Policy is not mandatory by any Individual Employer, but once implemented, the Program shall remain in effect unless otherwise agreed to by the Union and the Individual Employer.

## II. PURPOSE OF POLICY

A.  The Employer, Individual Employer(s) and the Union are committed to providing a safe and productive work environment for Employees. The Employer, Individual Employer(s) and the Union recognize the valuable resource we have in our Employees and recognize that the state of an Employee's health affects attitude, effort, and job performance. Substance abuse causes decreased efficiency and greatly increased risk of injury to Employees. The Employer, Individual Employer(s) and the Union therefore adopt this Policy. The intent of the Policy is threefold:

   1. To maintain a safe, drug and alcohol free workplace.

   2. To maintain our work force at its maximum effectiveness.

   3. To provide confidential referral to the Addiction Recovery Program ("ARP") and to provide confidential treatment to those Employees who recognize they have a substance abuse problem and voluntarily seek treatment for it.

B.  In order to achieve these purposes, it is our primary goal to identify those Employees and refer them to professional counseling, and treatment before job performance has become a disciplinary problem. Employees are urged to use the services available through ARP. ARP will assist them and refer them to the appropriate treatment program.

   1. Treatment for substance abuse and chemical dependency is provided under the Health and Welfare plan, up to the limits described in the plans.

   2. An Employee shall be granted necessary leave of absence for treatment ARP recommends contingent upon signing a return-to-work agreement as provided for in Section IX.

## III. EDUCATION PROGRAM

The Individual Employer will implement a comprehensive drug awareness and education program. The program shall include educating Employees and management/supervisory personnel about substance abuse and chemical dependency, the adverse affect they have on Employees and the Individual Employer, and the treatment available to Employees who abuse substances and/or are chemically dependent, and the penalties that may be imposed upon Employees who violate this Policy. The Individual Employer shall consult with ARP before it implements this policy so that ARP can provide education to the Individual Employer and its Employees. ARP shall continue to provide an educational program for the Individual Employers for their Employees and shall, to the maximum extent possible train all Employees of all Individual Employers who implement this Policy.

## IV. CONFIDENTIALITY

The Individual Employer will abide by all applicable State and Federal laws and regulations regarding confidentiality of medical records in any matter related to this Policy. The Individual Employer shall designate one of its management, supervisory or confidential employees to be its custodian of records and contact person for all matters related to this Policy. All such records shall be kept in a locked file which shall be labeled "confidential."

Confidential Employee records including records related to this Policy shall not be kept in the Employee's personnel file.

## V. TESTING

Testing for the presence of alcohol or controlled substances and/or their by-products in one's body may only be performed under the conditions set forth herein. All testing shall be done in accordance with the standards established by the Substance Abuse Mental Health Services Administration ("SAMHSA"), any successor agency, or any other agency of the federal government which has responsibility for establishing standards for drug testing. All such agencies shall be collectively referred to as "SAMHSA."

Chain of Custody: All SAMHSA standards for Chain of Custody will be adhered to. A specimen for which the SAMHSA standards are not complied with shall not be considered for any purpose under this Policy.

Laboratories: All Laboratories which perform tests under this Policy shall be SAMHSA certified. The parties shall approve all laboratories. ARP will provide the Employer and the Union a list of SAMHSA certified laboratories at least once a year.

Testing Procedures and Protocols: All SAMHSA standards for testing standards and protocols shall be followed. All specimens which are determined to be positive by the SAMHSA approved screening test shall be subject to a SAMHSA certified confirmatory test (gas chromatography/mass spectrometry).

Second Test: The laboratory shall save a sufficient portion of each specimen in a manner approved by SAMHSA so that an Employee may have a second test performed. Any Employee whose specimen is tested positive and who challenges a test result may have a sample of his/her specimen tested at his/her expense at a laboratory of his/her choice so long as that laboratory is SAMHSA certified and has been or is approved by the parties. If the second test is negative, the Employee will be considered to have been tested negative.

Cut-Off Levels: SAMHSA standards for cut-off levels will be complied with when applicable. Only tests which are positive pursuant to the SAMHSA standards shall be reported to the Medical Review Officer as positive. A .04 blood/alcohol level or above shall be considered to be positive.

Medical Review Officer: A Medical Review Officer ("MRO") shall review all positive test results. The MRO must be a licensed physician. The MRO shall be a member of the American Society of Addictive Medicine ("ASAM") if available. If no members of ASAM are available, the MRO must be a licensed physician with knowledge of drug abuse disorders and appropriate training to interpret and evaluate test results. The Union shall approve all MRO's. Upon confirmation of a positive test result, the MRO shall refer the affected Employee to ARP for assessment and referral to treatment, if appropriate.

Consent Form: Any Employee directed to submit to a test in accordance with this Policy will sign a consent and release form, a copy of which is attached hereto. The consent and release form will only authorize (1) the facility where the specimen is collected to collect the specimen, (2) the laboratory which performs the test to perform the test and to provide the results to the MRO, and, if negative, to the Individual Employer, and (3) the MRO to review tests and report to the Individual Employer whether the test is positive or negative, and (4) the presence of a Job Steward if available and requested. The consent and release form also will provide for an Employee's statement of prescription medication and over-the-counter drugs he/she has recently used. The Employee may be disciplined if he/she refuses to sign the authorization if the Individual Employer has advised the Employee (1) he/she must sign it or he/she will be disciplined up to and including termination, (2) the release is limited as provided herein, (3) the Employee has a right to consult with a Union representative before signing the release and before submitting to the test. An Employee who believes the Individual Employer is improperly directing him/her to submit to a test may file a grievance under Section 14.00.00 of the Master Agreement for Equipment Rental. The test results will be disregarded if the Board of Adjustment or Arbitrator determines the Individual Employer was not authorized by this Policy to direct the Employee to submit to the test.

Substances to be Tested For: A specimen may be tested for alcohol, marijuana, barbiturates, opiates, cocaine, phencyclidines (PCP), amphetamines, and methaqualone or the by-products of these substances.

The laboratory will report the test results to the MRO. The MRO will determine whether the test is positive or negative. The MRO shall report to the Individual Employer only whether the Employee tested positive or negative for one of these substances. The MRO will not identify the substance(s) for which the Employee tested positive.

Urine, Blood, or Breath Test: The Individual Employer may direct the Employee to submit to a urine test or a blood test for alcohol and/or other drugs, or a breath test for alcohol. An Employee who is unable to provide a urine sample within one hour of being directed to do so, will submit to a blood test.

Notification to Employer of Test Results: The laboratory shall report negative test results to the Individual Employer. The laboratory will report positive test results to the MRO. The MRO will determine whether the test was positive or negative and will report the final results to the Individual Employer. If the laboratory has the results of more than one test to report at one time and one or more of the test results is positive, it shall not report the negative test results to the Individual Employer until the MRO reports to the Individual Employer the results of the test(s) he reviews.

## VI. TYPES OF PERMISSIVE TESTING

A.   *TIME OF DISPATCH TESTING*

An Individual Employer may require an Employee to be tested for the presence in the Employee's body of one of the drugs or by-products thereof set forth above at the time the Employee is dispatched. It must test all Employees at the time they are dispatched if it tests any Employee. The Individual Employer shall put the Employee to work or pay the Employee pending the test results unless it has probable cause to believe the Employee is impaired, intoxicated, or under the influence of a drug. The standards for probable cause are set forth below in Section B. If the Individual Employer does not allow an Employee to work pending the test results because it believes it has probable cause, it shall make the Employee whole for all lost wages and benefits if the Employee tests negative. Employees who test positive will be referred to ARP. The Individual Employer shall not be obligated to employ any such Employee after ARP releases him to return to work but may employ such an Employee under the terms of a return-to-work agreement.

*Time of Dispatch Screening by the Job Placement Center:* The parties shall establish a joint committee to determine whether there is a feasible means by which the Job Placement Centers can conduct the drug/alcohol screen before dispatching an Employee so that only Employees with a negative test will be referred.

B.   *PROBABLE CAUSE TESTING*

An Individual Employer may require an Employee to submit to a drug test if it has probable cause that the Employee is impaired, intoxicated, and/or under the influence of a drug. Probable cause must be based on a supervisor's objective observations and may be based upon abnormal coordination, appearance, behavior, absenteeism, speech or odor. The supervisor's observations and conclusions must be confirmed by another supervisor. Employees who are directly or indirectly involved in an accident involving property damage or bodily injury which requires medical care are subject to a test as provided herein if probable cause exists. The innocent victims of an accident will not be subject to a test unless probable cause exists. The Individual Employer shall advise the Employee of his/her right to consult with a Union representative (including a Steward) and allow the Employee to consult with a Union representative before the Employee submits to the test, if the Union representative is available.

Employees required to submit to a test under Section B will be paid for all time related to the test including the time the Employee is transported to and from the collection site, all time spent at the collection site, and all time involved completing the consent and release form if the test results are negative.

The Individual Employer may not implement this Policy unless it subjects all management and supervisory employees to the same type of testing provided herein.

C.  *OWNER/AWARDING AGENCY REQUIREMENTS*

Whenever owner or awarding agency specifications require the Individual Employer to provide a drug-free workplace, the Union and the Employer or the Individual Employer shall negotiate such additional requirements and shall incorporate herein.

D.  *RANDOM TESTING*

An Individual Employer may initiate unannounced random testing, a selection process where affected Employees are selected for testing and each Employee has an equal chance of being selected for testing. If an Individual Employer initiates such testing, all Employees shall be subjected to such testing. The Employer may establish two random testing pools, one for DOT regulated Employees and one for all others. An Individual Employer who initiates random testing shall specifically state in its notice to the Union and its notice to Employees that Employees will be subject to random testing. The Individual Employer shall give thirty (30) days notice to the Union and Employees prior to implementing a random drug testing program.

E.  *UNANNOUNCED RANDOM TESTING*

An Individual Employer may initiate unannounced random testing, a selection process where affected Employees are selected for testing and each Employee has an equal chance of being selected for testing. If an Individual Employer initiates such testing, all Employees shall be subjected to such testing. The Individual Employer may establish two random testing pools, one for DOT regulated Employees and one for all others. An Individual Employer who initiates random testing shall specifically state in its notice to the Union and its notice to Employees that Employees will be subject to random testing. The Individual Employer shall give thirty (30) days notice to the Union and Employees prior to implementing a random drug testing program.

## VII. EMPLOYER REFERRAL

A decline in an Employee's job performance is often the first sign of a personal problem which may include substance abuse or chemical dependency. Supervisory personnel will be trained to identify signs of substance abuse, chemical dependency, and declining job performance. The Individual Employer may formally refer an Employee to ARP based upon documented declining job performance or other observations prior to testing under Paragraph VI. and/or disciplining the Employee.

## VIII. PROHIBITED ACTIVITIES/DISCIPLINE

An Employee shall not possess, use, provide, dispense, receive, sell or manufacture alcohol and/or any controlled substances as defined herein or have any measurable amount of any such substance or by-product thereof as defined in Section V. while on the Individual Employer's property or jobsite and/or while working for the Individual Employer unless the Employee has the Individual Employer's express permission to do so. An Employee shall not offer to sell any illegal controlled substances while on the Individual Employer's property or the jobsite and/or while working for the Individual Employer. An Employee shall not work while impaired, intoxicated or under the influence of alcohol and/or any controlled substance. An Employee who uses medication prescribed by a physician will not violate these rules by using such medication as prescribed if his physician has released him to work. An Employee who uses over-the-counter medication in accordance with the manufacturer's and/or doctor's recommendation shall not violate the rules by using such medication. Impairment caused by prescribed medication and/or over the counter medication does constitute a violation. Employees who violate the provisions shall be subject to appropriate discipline up to and including discharge.

## IX. REHABILITATION/DISCIPLINE

The Individual Employer may discipline any Employee who violates any provision of Paragraph VIII. which prohibits the sale of, attempted sale of or manufacture of prohibited substances and any Employee who is directly or indirectly involved in an accident involving property damage exceeding an estimated $5,000 or bodily injury requiring medical care. The Individual Employer is not required to refer any such Employee to ARP before it disciplines him. The Individual Employer may not discipline any Employee who violates any of the provisions of Paragraph VIII until such Employee has been offered an opportunity to receive treatment and/or counseling.

The Employee will not be discharged if he/she agrees in writing to undergo the counseling/treatment ARP prescribes. The Individual Employer shall re-employ the Employee when ARP releases him to return to work if it has work available. It will not be required to lay-off any current Employee in order to re-employ the Employee. If it does not have any work available when ARP releases him, it shall re-employ him as soon as it has work available. The Employee will be subject to a return-to-work agreement. The Individual Employer, the Union, and the Employee will enter into a return-to-work agreement. The return-to-work agreement will require the Employee to comply with and complete all treatment ARP determines is appropriate. It will also provide a monitoring of the Employee's compliance with the treatment plan ARP develops and will allow the Individual Employer to require the Employee to submit to unannounced testing. The Individual Employer may discipline the Employee for not complying with the return-to-work agreement. A positive test on an unannounced test will be considered a violation of the return-to-work agreement. Any unannounced testing shall be performed in accordance with this Policy. The Union and the Individual Employer will attempt to meet with any Employee who violates the return-to-work agreement and attempt to persuade the Employee to comply with the return-to-work agreement before the Individual Employer disciplines the Employee for not complying with the return-to-work agreement.

Employees who are working under a return-to-work agreement shall be subject to all of the Individual Employer's rules to the same extent as all other Employees are required to comply with them.

## X. NON DISCRIMINATION

The Individual Employer shall not discriminate against any Employee who is receiving treatment for substance abuse and/or chemical dependency. All Employees who participate in ARP and/or are undergoing or have undergone treatment and rehabilitation pursuant to this Policy shall be subject to the same rules, working conditions, and discipline procedures in effect for all Employees. Employees cannot escape discipline for future infractions by participating in ARP and/or undergoing treatment and rehabilitation.

## XI. COST OF PROGRAM

Evaluation and treatment for substance abuse and chemical addiction are provided for through the Health and Welfare Plan. An Individual Employer who adopts this Policy will not incur any additional cost for assessment, referral and treatment beyond that which is incorporated into its Health and Welfare contribution rate. ARP is funded through the Health and Welfare Trust to provide its current level of service which includes performing assessments of Employees and their spouses, referral of Employees and spouses to treatment, monitoring of Employees and spouse who are undergoing rehabilitation and providing limited education and training programs to Individual Employers. If ARP has to hire additional staff or incur additional cost to provide the services set forth herein, the Individual Employer will pay for such services on a fee for service basis. The Individual Employer will pay all costs for testing.