1  ERSKINE & TULLEY
   A PROFESSIONAL CORPORATION
2  MICHAEL J. CARROLL - STATE BAR #50246
   220 Montgomery Street, Suite 303
3  San Francisco, California 94104
   Telephone:  (415) 392-5431
4
   Attorneys for Third Party Defendant,
5  Western Conference of Teamsters
   Pension Trust Fund
6

7

8
                  UNITED STATES DISTRICT COURT
9
                NORTHERN DISTRICT OF CALIFORNIA
10

11 TRUSTEES OF THE OPERATING ENGINEERS )    NO. C 07 5323 CRB
   HEALTH AND WELFARE TRUST FUND,       )
12 et al.,                              )
                                        )
13          Plaintiffs,                 )    REPLY MEMORANDUM OF
                                        )    POINTS AND AUTHORITIES
14          vs.                         )    IN SUPPORT OF MOTION TO
                                        )    DISMISS THIRD PARTY
15 PRECISION CRANE SERVICES, INC.,      )    COMPLAINT
                                        )    [FRCP 12(b)(1)(6)]
16          Defendant and Third         )
            Party Plaintiff,            )    Date: April 18, 2008
17                                      )    Time: 10:00 a.m.
            vs.                         )
18                                      )    Hon. Charles R. Breyer
   WESTERN CONFERENCE OF TEAMSTERS      )    U. S. District Judge
19 PENSION TRUST FUND, et al.,          )    Courtroom 8, 19th Floor
                                        )
20          Third Party Defendants.     )
   _____)
21

22      REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF

23          MOTION TO DISMISS THIRD PARTY COMPLAINT

24                    I.   INTRODUCTION

25          Defendant and Third Party Plaintiff Precision Crane Services

26 agrees that its cause of action for declaratory relief may be

27 dismissed (Precision Pt. & Auth. 4, footnote 2).  The remaining cause

28 of action for indemnity and contributions should also be dismissed on

1  jurisdictional grounds and for failure to state a claim.   Precision
2  has not exhausted the administrative remedies provided in ERISA.   The
3  Third Party Complaint remains defective in that Precision has failed
4  to allege that a mistake of law or fact has occured in its payment of
5  contributions to the Western Conference of Teamsters Pension Trust
6  Fund.

7
8  ## II.   PRECISION IS REQUIRED TO EXHAUST THE ADMINISTRATIVE REMEDIES OF ERISA

9       The WCTPTF contends that Precision must plead and prove
10 exhaustion of administrative remedies, by seeking a refund of
11 mistakenly paid contributions prior to filing suit.

12      There are no Ninth Circuit refund cases dealing directly
13 with exhaustion of remedies in a refund of contributions context.
14 There are cases in other jurisdictions which have dismissed a lawsuit
15 for failure to exhaust administrative remedies under a pension plan
16 agreement.   Whitworth Bros. Storage Co. v. Central States Southeast
17 & Southwest, 982 F.2d 1006, 1019 (6th Cir. 1993).   See also Kross v.
18 Western Electric Co., Inc., 701 F.2d 1238, 1243 (7th Cir. 1982)
19 quoting extensively from Amato v. Bernard, 618 F.2d 559, 557-68 (9th
20 Cir. 1980).

21      For Ninth Circuit authority both sides cite as relevant
22 Amato v. Bernard 618 F.2d 559,568 (9th.Cir.1980).   In Amato a union
23 member sued the Carpenters Pension trustees seeking a declaration of
24 his rights and the trustees' duties under the Plan to provide him with
25 a full pension.   He asserted that he had applied for the pension on
26 numerous occasions before filing the complaint, and had each time been
27 denied.   On summary judgment the Court found one proper application
28 had been made and denied, but because it predated ERISA, there was no

1  review remedy available.

2          Amato claimed new facts and circumstances, not presented to

3  the Board, now entitle him to further consideration.   The Ninth

4  Circuit affirmed the lower court's finding that Amato had not

5  exhausted his administrative remedies regarding his second pension

6  application.   The Court explained that:

> The Ninth Circuit has long held that ERISA, guided under
> trust law, contemplates utilization of administrative
> remedies because "the trustees of covered benefit plans are
> granted broad fiduciary rights and responsibilities under
> ERISA...and implementation of the exhaustion requirement
> will enhance their ability to expertly and efficiently
> manage their funds by preventing premature judicial
> intervention in their decision-making processes.   The text
> of ERISA and the policies underlying that text, far from
> suggesting that Congress intended to abrogate the
> exhaustion requirement in the case of suits under ERISA or
> that sound policy would counsel its abrogation by the
> courts, suggest just the opposite.
> [...]
> [A] primary reason for the exhaustion requirement, here as
> elsewhere, is that prior fully considered
> actions...trustees interpreting their plans and perhaps
> also further refining and defining the problem in given
> cases, may well assist the courts when they are called upon
> to resolve the controversies. [citations].   In sum, we
> conclude that the federal courts have the authority to
> enforce the exhaustion requirement in suits under ERISA,
> and that as a matter of sound policy they should usually do
> so.

            _Amato v. Bernard_, supra 618 F.2d at pp. 567-568.

21          Precision admits that if it were a plaintiff initiating an

22  original lawsuit against the WCTPTF that it would first be required

23  to request that the contributions be refunded. (Precision Pt. & Auth.

24  8:7-10).   However, in this case, because it is the object of an

25  initial legal action by the Operators, it is somehow relieved of this

26  condition precedent.   It offers no legal authority for this

27  proposition except the dicta in _Amato_, which opined that occasions can

28  arise when resort to administrative procedures is futile, or the

remedy inadequate.   The <u>Amato</u> Court found the record devoid of evidence that pursuit of administrative procedures would be futile. "Indeed, the only argument Amato makes to show such futility is the one we have just considered and rejected, that his administrative remedies are inadequate."   <u>Amato</u> p. 569.

Precision speculates that the vagueness of the refunds' statutory terms will make the remedy inadequate.   "There are no safeguards contained in this rather vague procedure to protect Precision's right to a refund."   (Precision Pt. & Auth. 9:3-5).

Precision relies on <u>Southwest Alaska Conservation Council v. Watson</u>, 697 F.2d 1305 (9th Cir. 1983) as an example of when administrative remedies are inadequate and exhaustion of administrative remedies is forgiven.   The case involves the application of Alaska law and Forest Service Regulations to mining activities.   There is no parallel to the facts at hand.

The proper procedure to be followed is outlined in <u>Admiral Packing v. R. F. Kennedy Farm Med. Plan</u>, 874 F.2d 683, 684 (9th Cir. 1989).   The employer requested a refund under Section 403(c)(2)(A)(ii) for mistakenly paid contributions.   In Admiral the benefit plan administrator declined to make a refund.   Within six months the employer filed a legal action seeking return of the benefit contributions.

Precision would place itself above ERISA's statutory scheme providing for pension contribution refunds.   It characterizes itself as the hapless intermediary between two sets of waring unions and trust funds. All Precision needs to do is defend the Operator's audit and turn around and demand a refund payment by the WCTPTF.

ERISA complicates Precision's theory of easy transferability

1 of assets, and so Precision seeks to circumvent its refund procedures

2 by asserting an independent right of recovery through a cause of

3 action for indemnity and contribution.

4           ERISA articulates a standard of care for the WCTPTF

5 Administrator and Trustees which places any "rights" of Precision in

6 a subordinate position to that of its workers.  ERISA Section 404

7 requires these fiduciaries to discharge their duties with respect to

8 the plan solely in the interest of the plan's participants and

9 beneficiaries, 29 U.S.C §1104(a)(1).  The trustees owe an "unwavering

10 duty of complete loyalty to the beneficiary of the trust to the

11 exclusion of the interests of all other parties."  <u>NLRB v. Amex Coal</u>,

12 453 U.S. 322,329 (1981).

13           Precision admits that it has been bound to the Operator's

14 collective bargaining agreements since 1981, (Operator's Complaint

15 P10, Precision Answer P 10), and to Teamster contracts at all times

16 relevant hereto, (Third Party Complaint P6).  If the Teamsters and

17 Precision had contracts for a longer period than the three year audit

18 then Teamster employees could meet the Plan's five year vesting

19 requirement.  The administrator and trustees are charged to protect

20 the employees' interests in future benefits, which is one of the

21 reasons ERISA contains an exclusive statutory scheme to deal with

22 mistakenly paid contributions.

23           The Operators' audit only covers three years.  If a

24 judgment is entered in favor of the Operators and this Court were to

25 grant Precision a refund of the contributions the WCTPTF has received

26 under an indemnity theory, the Trustees would have been deprived of

27 an opportunity to exercise its fiduciary responsibility, and peculiar

28 knowledge of the Teamster Pension Plan, and to assess the impact on

1 | Precision's employees.  See the quotation from <u>Amato v. Bernard</u>, 618
2 | F.2d 559, 567-568 (9th Cir. 1980) at page 3 above.  The Trustees are
3 | uniquely qualified to make this assessment, but will be denied the
4 | opportunity if the conditions specified in Section 403(c)(2)(A) are
5 | not adhered to.

6 | Precision implies that the WCTPTF is somehow culpable in
7 | this matter.  "Without the joinder of Western, Precision may
8 | ultimately be required to pay Plaintiff hundred of thousands of
9 | dollars which they have already paid to Western."  Precision Pt. &
10 | Auth. 6:17-18.  "If Plaintiffs sustained damages as alleged in their
11 | first amended complaint, these damages were caused entirely or in
12 | part, by Third Party Defendants..."  Third Party Complaint 4:8-9.

13 | The WCTPTF is not a party to the contract.  It is not at the
14 | table when the contracts are negotiated.  It is a special third party
15 | beneficiary of this process. <u>Hotel Employees et al. v. Elks Lodge</u>
16 | <u>1450</u>, 827 F.2d 1324, 1326 (9th Cir. 1987).  Precision hires its
17 | employees and assigns them to specific jobs.  In <u>Whitworth Bros.</u>
18 | <u>Storage v. Central States S.E. Areas</u>, 982 F.2d 1006 (6th Cir. 1993),
19 | the Court points out that "An important component of ERISA is it does
20 | not compel the establishment of employee pension funds. <u>Whitworth</u> p.
21 | 1014.  The Trust Fund in Whitworth, like the funds in this case,
22 | operated on a self reporting system, in which the employer is
23 | responsible for notifying the Fund of the change in the status of any
24 | employee.  Otherwise the Fund continues to bill for all employees for
25 | whom contributions were paid in the prior monthly report. <u>Whitworth</u>
26 | 1009, footnote 5.

27 | Precision relies upon <u>Trustees of Operating Engineers</u>
28 | <u>Pension Trust v. Tab Contractors, Inc.</u>, 224 F.Supp. 2d 1272 (D. Nev.

1  2002) for the survival of the employer's indemnification claim from

2  a motion for judgment on the pleadings.  Nowhere in the Tab case is

3  the argument made, as here, that exhausion of administrative remedies

4  under ERISA is a condition precedent to pursuit of this remedy.

5       It must also be noted that Tab's complaint did allege that

6  there were "mistakenly paid contributions".  Tab p. 1283.  In British

7  Motor Car Distributors v. San Francisco Auto, 882 F.2d 371 (9th Cir.

8  1989) the Court noted "...even if we were to recognize a federal

9  common law cause of action for restitution of mistaken contributions

10 to an ERISA plan, the Employers would still be required to allege a

11 section 403(c)(2)(A)(ii) mistake of fact."

12      Precision contends at Pt. & Auth. 5:1-5 that it adequately

13 alleged a mistake of law or fact in ¶11 of the Third Party Complaint.

14 That paragraph merely says, instead of paying Plaintiff Trust Funds,

15 Precision paid the Teamster Trusts because it believed its employees

16 were covered by the Teamsters contract.  This is wholly inadequate

17 expression of a mistake of law or fact under the cases cited above.

18

19  III.  PRECISION IS NOT RELIEVED OF THE NECESSITY TO EXHAUST
       ADMINISTRATIVE REMEDIES BECAUSE IT STATES A "STATUTORY" CLAIM

20      Precision makes this assertion at Pt. & Auth. 9:16-10:6, and

21 relies on the decision in Amaro v. Continental Can Company, 724 F.2d

22 747 (9th Cir. 1984).  In that case the Court had to decide whether

23 laid off employees of Continental Can had to complete the union

24 contract's grievance procedure, including final and binding

25 arbitration, a second time, before filing suit under ERISA contending

26 that their layoffs took place in order to deny the employees' future

27 pension credits.  The Court found that Congress intended, in enacting

28 ERISA Section 510, to create a statutory right independent of any

1   collectively bargained rights.    To rule otherwise would have

2   endangered protections afforded by ERISA and make them subject to

3   elimination in the collective bargaining process.

4         Precision asserts that its' claim is actually statutory and

5   not "plan based".   Perhaps this confusing terminology is an attempt

6   to conceptually mirror the Amaro tension between the contracts'

7   arbitration scheme and ERISA.

8         In the instant case the administrative remedies Precision

9   seeks to avoid are an integral part of the ERISA statutory scheme

10  itself, not a competing outside arbitration procedure created by the

11  bargaining parties as in Amaro.

12        The Third Party Complaint sets forth causes of action for

13  declaratory relief (now abandoned), indemnity and contribution.   Now

14  Precision claims it is "...merely attempting to "right" this statutory

15  wrong."   Pt. & Auth. 9:21.   It is not articulated in the complaint.

16

17  IV.   THE COURT CANNOT ACQUIRE JURISDICTION OVER PRECISION'S
          CLAIM SOLELY ON THE BASIS OF RULE 14 OR RULE 19

18        Precision contends that if the Court has subject matter

19  jurisdiction over the original action, no independent basis of

20  jurisdiction must be alleged or proved.   It cites Glens Falls Indem.

21  Co. v. United States, 229 F.2d 370, 373-374 (9th Cir. 1955).

22        At Pt. & Auth. 5:25-6:5 Precision further argues that the

23  claims made in the Third Party Complaint are ancillary claims to those

24  in the Operator's complaint and therefore "no independant basis of

25  jurisdiction is needed".

26        Precision cannot rely upon Rule 14 and ancillary claims

27  rules as an excuse for failing to state a cause of action cognizable

28  under ERISA:

"Rule 14(a) is procedural and creates no substantive remedies. Therefore, to utilize Rule 14, defendant ("third party plaintiff") must demonstrate an existing right of action against the third party defendant. [*Andrulonis v. United States* (2nd Cir. 1994) 26 F3d 1224, 1233; see *Mortgages, Inc. v. United States Dist. Ct.* (9th Cir. 1991) 934 F2d 209, 212 – third party complaint not allowed under False Claims Act, 31 USC §3729]."

Federal Civil Procedure Before Trial, § 7:308, p. 7-106 (Rutter 2007)

FRCP 19 is also unavailing to Precision. It deals with which persons or entities will be parties to an original action, not the Third Party procedural setting of this case.

The only remedy available to Precision is a refund of improperly paid contributions "...where the conditions specified in Section 403(c)(2)(A) of ERISA are met." <u>Award Service v. Northern California Retail Clerks Unions et al.</u>, 763 F.3d 1066, 1070 (9th Cir. 1985).

### V.  <u>CONCLUSION</u>

The WCTPTF incorporates by reference and relies upon the legal arguments made by co-defendant North Bay in support of its Motion to Dismiss, and requests that it's motion be granted.

Respectfully submitted.

Dated: April ___, 2008

ERSKINE & ~~TULLEY~~
A PROFESSIONAL CORPORATION

By:

Michael J. Carroll
Attorneys for Third Party
Defendant, Western Conference
of Teamsters Pension Trust Fund

**PROOF OF SERVICE BY MAIL**

I am a citizen of the United States and employed in the City and County of San Francisco, California. I am over the age of eighteen years and not a party to the within above entitled action; my business address is 220 Montgomery Street, Suite 303, San Francisco, CA 94104. On April ___3___, 2008, I served the REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS THIRD PARTY COMPLAINT on the parties in said action, by placing a true copy thereof enclosed in a sealed envelope with postage thereon fully prepaid, in the United States post office mail box at San Francisco, California, addressed as follows:

Michael David Nelson, Esq.
870 Market Street, Suite 664
San Francisco, CA 94102

Kenneth C. Absalom
Law Offices of Nevin & Absalom
22 Battery Street, Suite 333
San Francisco, CA 94111

Diane Aqui
Jordan & Aqui
1612 Fourth Street
Santa Rosa, CA 95404-4020

Richard Grosboll
Nyhart, Anderson
44 Montgomery Street, 2080
San Francisco, CA 94104

I, SHARON EASTMAN, certify (or declare), under penalty of perjury that the foregoing is true and correct.

Executed on April ___3___, 2008 at San Francisco, California.

_____
SHARON EASTMAN