IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRUSTEES OF THE OPERATING ENGINEERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>PRECISION CRANE SERVICES INC.,<br><br>Defendant and Third Party Plaintiff,<br><br>v.<br><br>WESTERN CONFERENCE OF TEAMSTERS PENSION TRUST FUND; and NORTH COAST TRUST FUND,<br><br>Third Party Defendants. | No. C 07-05323 CRB<br><br>**MEMORANDUM AND ORDER** |

Third Party Defendants move to dismiss the Third Party Complaint for lack of jurisdiction and failure to state a claim. After carefully considering the papers filed by the parties, and having had the opportunity for oral argument, the motion to dismiss is GRANTED.

**BACKGROUND**

Plaintiffs Trustees of the Operating Engineers Trust Funds filed this ERISA lawsuit to recover unpaid contributions from 2004 to July 2006. The Operating Engineers Trust Funds

allege that defendant Precision Crane Services Inc. "has under-reported the number of hours worked by employees for whom contributions were made and has failed to report all hours worked by the employees." The Trust Funds allege further that a September 2006 audit of Precision Crane revealed for the first time the underpayment in the total amount of $474,844.42.

Precision Crane responded by filing a third-party interpleader complaint against the Western Conference of Teamsters Pension Trust Fund and North Coast Trust Fund ("Teamsters Funds"). See Fed. R. Civ. P. 14(a) ("[A] defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claims against the third-party plaintiff."). Precision Crane alleges that it was a signatory to a collective bargaining agreement with the Teamsters Union and that pursuant to that agreement it paid contributions totaling $474,844.42 to the Teamsters Funds–the same amount the plaintiff Operating Engineers Trust Funds claim they are owed. Precision Crane alleges it paid the contributions to the Teamsters Funds rather than the Operating Engineers Funds because it believed its employees were covered by the Teamsters collective bargaining agreement. Precision Crane makes two claims in its third party complaint: (1) indemnity/contribution and (2) declaratory relief.

The Teamster Funds now move to dismiss the Third Party Complaint for lack of jurisdiction and failure to state a claim. Pension Crane does not oppose the dismissal of its declaratory relief claim.

**JURISDICTION**

The Teamster Funds move to dismiss on the ground that the Third Party Complaint does not allege how this Court has jurisdiction of Precision Crane's claims. Precision Crane admits this omission, but contends that--although it characterizes its claim as one for indemnity-- the Court has ERISA jurisdiction as set forth in Award Service, Inc. v. Northern California Retail Clerks Unions and Food Employers Joint Pension Trust Fund, 763 F.2d 1066 (9th Cir. 1985).

2

1   In <u>Award Service</u>, the plaintiff/employer filed suit against a multiemployer pension
2 fund to recover contributions made to the fund in error.  The Ninth Circuit found two bases
3 for federal jurisdiction:  First, relying on <u>Fentron Industries, Inc. v. National Shopmen</u>
4 <u>Pension Fund</u>, 674 F.2d 1300, 1304-05 (9th Cir. 1982), the court held that "an employer may
5 bring an action under ERISA to enforce its terms where the employer alleges specific and
6 personal injury," and that an allegation that an employer has mistakenly paid contributions
7 that it was not obligated to make constitutes such specific and personal injury.  <u>Id.</u> at 1068.
8 Second, the court held that it had federal question jurisdiction to determine whether an
9 implied cause of action exists under ERISA section 403(c)(2)(A) for return of mistakenly
10 paid contributions.

11   The first basis for jurisdiction–<u>Fentron</u>– is no longer good law.  See, e.g., <u>Pilkington</u>
12 <u>PLC v. Perelman</u>, 72 F.3d 1396, 1401 (9th Cir. 1995) (refusing to rely on <u>Fentron</u> because it
13 had been "largely undermined" by Supreme Court authority); <u>Paige v. State of Cal.</u>,102 F.3d
14 1035 (9th Cir. 1996) (holding that <u>Fentron</u> "is no longer controlling authority").

15   As for the second basis, the <u>Award Service</u> court held that an implied right of action
16 exists under ERISA section 403(c)(2)(A) for the return of contributions mistakenly paid to a
17 trust fund.  763 F.2d at 1068;  <u>see also</u> <u>Award Service, Inc. v. Northern California Retail</u>
18 <u>Clerks Unions</u>, 774 F.2d 1391 (9th Cir. 1985) (reaffirming the implied right of action for
19 return of mistakenly made contributions in order denying motion for recall of the mandate).
20 Thus, this Court has jurisdiction to adjudicate a section 403(c)(2)(A) claim for return of
21 contributions mistakenly made.

## FAILURE TO STATE A CLAIM

23   The Third Party Complaint does not make a section 403(c)(2)(A) claim; instead it
24 makes a common law claim for indemnity.  The dispositive question, however, is whether
25 Precision Crane could amend its complaint to state a section 403(c)(2)(A) claim.

26   ERISA provides that "the assets of a plan shall never inure to the benefit of any
27 employer and shall be held for the exclusive purposes of providing benefits to participants in
28 the plan and their beneficiaries and defraying reasonable expenses of administering the plan."

29 U.S.C. § 1103(c)(1). Thus, an ERISA plan may not give plan funds to an employer. An exception, however, is found in section 403(c)(2)(A)(ii):

> (2)(A) In the case of a contribution, . . .
>
> (ii) if such contribution or payment is made by an employer to a multiemployer plan by a mistake of fact or law, paragraph (1) shall not prohibit the return of such contribution or payment to the employer *within 6 months after the plan administrator determines that the contribution was made by such a mistake*.

29 U.S.C. § 1103(c)(2)(A)(ii) (emphasis added). This is the section in which the Award Service court implied the private right of action for return of contributions.

The key here is that the exception allows the return of payments made based on mistake of fact or law "within 6 months after the plan administrator determines that the contribution was made by such mistake." In accordance with this requirement that the plan administrator make a determination, Internal Revenue Service regulations require that employers file claims for refund of contributions with the plan administrator. 26 C.F.R. § 1.401(a). In Award Service, the court noted that section 403(c)(2)(A)(ii) limits the award of mistakenly paid contributions to the 6-month period following the date the plan administrator determines that a mistake has been made. 763 F.2d at 1069. The court observed:

> The record does not indicate whether, and if so when, the plan administrator made that determination. Pension Trust argues that Award Service's request for refund was untimely because it was not made within 6 months of discovery of the mistake. Because a record was not made on this issue and because it was not fully briefed on this appeal, we decline to decide at this stage of the litigation whether a refund of Award Service's contributions would violate the 6-month requirement of § 403(c)(2)(A)(ii).

Id. n.3.

Here, Precision Crane admits that it has never asked the Teamster Funds for a refund and thus, the Teamster Funds (the plan administrator) has never determined that the contributions were made by mistake. Opposition at p. 8 ("Precision admits that they have not requested a refund"). Unless and until Precision Crane requests a refund, and the Teamsters Fund acts on that request, Precision Crane does not have a section 403(c)(2)(A) claim.

4

Precision Crane admits that if it was a plaintiff "initiating legal proceedings, Precision would be required to first request that the contributions be refunded." Opposition at 8. It contends, however, that because the Operating Engineers has now filed suit for unpaid contributions, Precision Crane is somehow excused from the plain language of the statute. Relying on Amato v. Bernard, 618 F.2d 559, 568 (9th Cir. 1980), it argues that it would be an abuse of discretion to not excuse the "exhaustion" requirement; to not do so may require Precision Crane to pay the Operating Engineers before receiving its refund from the Teamsters Fund. In Amato, the court upheld the dismissal of an ERISA suit based on failure to exhaust administrative remedies, but in so doing noted: "We recognize of course that despite the usual applicability of the exhaustion requirement, there are occasions when a court is obliged to exercise its jurisdiction and is guilty of an abuse of discretion if it does not, the most familiar examples perhaps being when resort to the administrative route is futile or the remedy inadequate." Id. at 568. Precision Crane argues that the procedures are inadequate because the statute does not specify how long the plan administrator has to determine whether contributions were paid by mistake–the plan administrator could take years to decide.

Precision Crane's argument fails. First, Precision Crane concedes that it *would have to first request a refund* if it had filed its lawsuit for a refund before it was sued by the Operating Engineers Funds for unpaid contributions. But the same allegedly inadequate procedures exist in both cases.

Second, it is premature to declare the procedures inadequate given that Precision Crane has never requested a refund from the Teamsters Funds. Perhaps the Teamsters Fund will make a decision within a week or a few months.

Third, this is not an administrative exhaustion requirement; the statute itself *prohibits* refunds unless they are made within 6 months of the plan administrator's determination that a mistake was made. The plan administrator cannot make that determination until the employer makes a request for a refund based on a mistake. Precision Crane does not cite any authority that suggests this Court can simply ignore that statutory requirement.

5

Fourth, the Operating Engineers allege that they demanded payment from Precision Crane before the Funds filed this lawsuit; thus, at that time Precision Crane could have requested a refund from the Teamsters Fund. It makes no sense to excuse the requirement that an employer first request a refund from the plan before filing suit simply because the employer delayed requesting the refund until after it was sued.

Precision Crane's reliance on Trustees of the Operating Engineers Pension Trust v. Tab Contractors, Inc., 224 F.Supp.2d 1272 (D. Nev. 2002) is unhelpful. While the court held that it has jurisdiction of the employer's "indemnification claim," it relied on the implied right of action found in Award Services. The court did not address whether the employer actually met the requirements of that implied right of action. In any event, here, too, the Court has jurisdiction to consider an implied section 403(c)(2)(A) cause of action; Precision Crane simply cannot state such a claim.

## NECESSARY PARTY

Precision Crane also argues that the Teamsters Funds are Rule 19 necessary parties. No such allegation in included in the Third Party Complaint and Precision Crane's Opposition does not make the required showing.

## CONCLUSION

This Court would have jurisdiction of a claim for refund of contributions made by mistake under ERISA section 403(c)(2)(A) if the Third Party Complaint made such a claim. Precision Crane, however, cannot presently make such a claim because it admits that it has not yet requested a refund from the Teamsters Funds based on a mistake; indeed, at oral argument it explained that it does not believe it made a mistake. The Third Party Complaint is therefore DISMISSED.

**IT IS SO ORDERED.**

Dated: April 22, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE